1
2
3
4
5                    DISTRICT COURT OF GUAM
6                     TERRITORY OF GUAM
7
8  **JOEL JOSEPH, D.V.M.,**              )      CIVIL CASE No. CV 14-00005
                                          )
9           Plaintiff,                    )
                                          )
10          vs.                           )
                                          )      REPORT AND RECOMMENDATION
11  **BENJAMIN ABRAMS, DAVID**            )
   **HIGHSMITH, JAMES GILLIAN,**          )
12  **ROSANNA RABAGO, M. THOMAS**         )
   **NADEAU, AND DOES I THROUGH L,**      )
13                                        )
            Defendants.                   )
14  _____)

15          Before the court are three separate motions filed by Defendants to Dismiss Plaintiff's

16  First Amended Complaint ("FAC") for Damages filed herein on July 11, 2014.  See FAC, ECF

17  No. 26.  The first motion to dismiss was filed on July 24, 2014 by Defendant Highsmith.  *See*

18  ECF No. 28.  The second motion was filed by Defendant Abrams on July 25, 2014.  *See* ECF

19  No. 29.  The third motion was filed by Defendants Gillian, Rabago, and Nadeau, (collectively

20  "DPHSS Defendants") also on July 25, 2014.  *See* ECF No. 30.  On July 29, 2014, the motions

21  were referred to the undersigned for a Report and Recommendation.  *See* ECF No. 31.

22          Plaintiff filed his opposition to the Highsmith motion to dismiss/summary judgment on

23  August 7, 2014.  See ECF No. 32.  On August 8, 2014, Plaintiff filed his opposition to Abrams'

24  motion to dismiss as well as the Gillian, Rabago, and Nadeau motion to dismiss.  See ECF Nos.

25  35 and 36.

26          The Defendants filed their replies to the opposition by Plaintiff on August 15, 2014.  See

27  ECF Nos. 37, 38, and 39.

28          The court set a hearing on the motions for February 27, 2015 but it was subsequently

moved to March 13, 2015 to accommodate the schedules of the parties and their attorneys. The court heard oral arguments on March 13, 2015 and took the matter under advisement.

The court, having reviewed Defendants' three separate motions to dismiss Plaintiff's First Amended Complaint, Plaintiff's opposition to the three motions, and Defendants' replies to the opposition, now renders its decision in this Report and Recommendation.

## BACKGROUND

Plaintiff's First Amended Complaint (FAC) "challenges the wrongful and unlawful refusal by Defendants to issue to Plaintiff the renewal of his Controlled Substance Registration ('CSR')" which was later used as a pretext not to renew his license to practice veterinary medicine and to raid his clinic. Defendants' actions further interfered with Plaintiff's ability to practice his profession and caused him to incur legal expenses.[1]

Plaintiff seeks damages against Defendants for their conduct which violated his civil rights, including his right to free speech, right to petition, due process of law, equal protection of the law, privacy, and unlawful search and seizure, guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, under 42 U.S.C. § 1983, and 48 U.S.C. § 1421b.[2]

Plaintiff is a veterinarian licensed to practice in Guam.[3]

Defendant Abrams is an Assistant Attorney General of Guam.[4]

Defendant Gillan is the Director of the Department of Public Health and Social Services ("DPHSS").[5]

---

[1]See Paragraph 1 of Preliminary Statement, page 2 of the FAC.

[2]See Paragraph 2 of Preliminary Statement, page 2 of the FAC.

[3]See Paragraph 5 of the FAC.

[4]See Paragraph 6 of the FAC.

[5]See Paragraph 7 of the FAC.

Page -2-

1     Defendant Nadeau is the head of the Environmental Health Division of DPHSS.[6]

2     Defendant Rabago is an Environmental Officer in the Environmental Health Division of

3     DPHSS.[7]

4     Defendant Highsmith is an Assistant Attorney General of Guam.[8]

5     Plaintiff is a veterinarian who has been licensed to practice veterinary medicine in Guam

6     by the Guam Board of Allied Health Examiners (the "Board") since 2001.  The DPHSS had

7     issued Plaintiff a CSR in 2010.  The CSR was renewed in April 2011 and was set to expire on

8     April 30, 2012.  Plaintiff submitted a renewal application for his CSR to DPHSS on April 25,

9     2012.

10    On May 4, 2012, the DPHSS Defendants, instead of renewing the CSR, caused to be

11    issued an Order to Show Cause ("OSC") which directed Plaintiff to show cause why his CSR

12    should not be revoked or suspended.[9]  According to the OSC, the Guam Board of Allied Health

13    Examiners voted to suspend Plaintiff's license to practice veterinary medicine on Guam

14    effective April 27, 2012.  DPHSS believed that Plaintiff's suspension to practice veterinary

15    medicine carried with it the suspension or revocation of the CSR issued by DPHSS to Plaintiff

16    which authorized him to prescribe, dispense, and possess controlled substances with respect to

17    his veterinary practice.

18    Plaintiff responded to the OSC and advised DPHSS that the OSC was untimely under 9

19    G.C.A. § 67.305(a).  Under that statute, an OSC had to be served no later than 30 days before

20    the expiration of a registration.[10]

21

22

23    _____

24    [6]See Paragraph 8 of the FAC.

25    [7]See Paragraph 9 of the FAC.

26    [8]See Paragraph 10 of the FAC.

27    [9]See Paragraph 15 and Exhibit 3 of the FAC.

28    [10]The OSC was issued four days after the expiration of Plaintiff's CSR.

Page -3-

On May 9, 2012, Gillan wrote to Plaintiff and rescinded the OSC.[11]  The letter also advised Plaintiff that his renewal CSR application would be processed accordingly, and that Plaintiff would be notified once it was finalized.  If Plaintiff had any further inquiries, he was to contact Rabago.

On May 31, 2012, the CSR certificate for Plaintiff was reviewed and approved by Nadeau.  Thereafter, on June 4, the CSR certificate was signed by Leo Casil, the Acting Director of DPHSS.[12]  The same day, an employee of DPHSS contacted the manager of Plaintiff's clinic and advised him that the CSR was ready to be picked up.  The manager requested that the CSR be mailed to Plaintiff.  However, instead of mailing the CSR to Plaintiff, Rabago contacted Abrams who instructed her not to release the CSR.  Plaintiff alleges that the actions of Defendants Rabago and Abrams, who knew there was no legal basis not to release the CSR to Plaintiff, violated Plaintiff's right to procedural and substantive due process.[13]

On June 25, 2012, Plaintiff's manager went to DPHSS to pick up the CSR.  DPHSS refused to release the CSR and told the manager to contact the Office of the Attorney General.  On the same day, Nadeau emailed Gillan about the refusal to release the CSR to Plaintiff.  The email was also sent to Abrams who instructed both men not to release the CSR.  It is alleged that at that time, Gillan, Nadeau, and Abrams knew that there was no lawful basis to release the CSR, violating Plaintiff's right to procedural and substantive due process, and affected his ability to practice his profession and earn a living.[14]

Plaintiff then sent a Sunshine Act request seeking documentation from DPHSS about the refusal to release his renewed CSR.  In a letter dated July 24, 2012, Highsmith responded to Plaintiff's inquiry and confirmed that DPHSS had refused to release the CSR based upon

---

[11]See Exhibit 4 to the FAC.

[12]See paragraph 18 of the FAC.

[13]*See* Paragraph 19 of the FAC.

[14]*See* Paragraph 20 of the FAC.

Page -4-

Abram's instructions and refused to release any relevant documents. Plaintiff further alleges that Highsmith knew there was no legitimate basis not to release the CSR to him.[15]

In addition to fighting for the release of his CSR, Plaintiff also faced a renewal of his veterinary license. Plaintiff's license to practice veterinary medicine was set to expire on December 31, 2012. He submitted his renewal application to the Board on or about November 20, 2012.[16]

The Board considered Plaintiff's renewal application on December 28, 2012 at which time it voted not to renew his license to practice veterinary medicine. Apparently, Highsmith told the Board that Plaintiff did not have a current CSR, and, based in part on this information, the Board refused to renew Plaintiff's license. It is alleged that when Highsmith told the Board that DPHSS did not renew Plaintiff's CSR, Highsmith knew that the DPHSS Defendants had wrongfully and unlawfully failed to release the CSR to Plaintiff. It is further alleged that Highsmith's comment was malicious and intended to retaliate against Plaintiff for exercising his right to free speech and his right to petition.[17] According to the FAC, prior to Highsmith's malicious comment to the Board, Highsmith had developed a "personal animus" against Plaintiff based upon a series of disputes between the two.[18]

On January 3, 2013, Highsmith wrote to Plaintiff to inform him that the Board refused to renew Plaintiff's veterinary license. The letter included "purported grounds for the non-renewal" which had not been discussed by the Board at its meeting. The FAC asserts that by adding these extraneous bases for the non-renewal, Highsmith demonstrated his animosity for Plaintiff.[19]

---

[15]*See* Paragraph 21 of the FAC.

[16]See Paragraph 26 of the FAC.

[17]See Paragraph 27 of the FAC.

[18]See Paragraph 28 of the FAC.

[19]See Paragraph 29 of the FAC.

Page -5-

On May 8, 2013, the Superior Court of Guam issued an Administrative Inspection and Search Warrant in *In Re Application of Department of Public and Social Services for Administrative Inspection and Search Warrant of Wiseowl Animal Hospital*, Superior Court of Guam Special Proceedings Case No. SP0074-13.[20] The FAC asserted that Abrams instigated the issuance of the search warrant. At the direction of Abrams, Katherine Duenas (a DPHSS Environmental Officer) signed an affidavit and an application for the search warrant, both of which were prepared by Abrams.

The search warrant was served and executed at about 4:30 p.m. on the same day. A number of officers from the Guam Police Department (GPD) were present at Plaintiff's clinic and confiscated thousands of patient files, clinic financial records and computers. Plaintiff and some of his employees attempted to video the conduct of the GPD officers but their cameras were confiscated and some were destroyed.[21]

The FAC also asserts that there has been a longstanding dispute between Plaintiff and Defendants Abrams and Highsmith which provides a background for the retaliatory actions taken against him in 2012 and 2013.

In 2011, Abrams, as counsel for the Board, commenced two proceedings against Plaintiff in the Superior Court of Guam: Guam Board of Allied Health Examiners v. Joseph, Special Proceeding Case No. SP129-11, and Guam Board of Allied Health Examiners v. Joseph, Special Proceedings Case No. SP184-11. The Superior Court of Guam eventually dismissed these actions, even going so far as to comment that the Board's decision to file its petition against Plaintiff as being "incomprehensible."[22]

Defendants Abrams and Highsmith also brought charges of unprofessional conduct in

---

[20]See Paragraph 33 and Exhibit 5 to the FAC.

[21]Plaintiff actually devotes Paragraphs 33 through 42 to describe the wrongful raid on his clinic. The court has not referenced those other paragraphs as they deal with issues related to the DOES Defendants.

[22]See Paragraph 46 of the FAC.

Page -6-

1 several disciplinary proceedings before the Board, and each time the Board imposed disciplinary

2 action against Plaintiff. Plaintiff sought judicial review every time disciplinary action was

3 imposed and each time the Superior Court of Guam vacated the Board's order of discipline

4 based upon the Board's denial of due process or other violations of local law.[23]

5       Plaintiff then began attending Board meetings and asked the Board to take action against

6 other professionals whom he believed had violated the law. Highsmith was present at a number

7 of these meetings when Plaintiff was exercising his right of free speech and right to petition.

8 Plaintiff also began a campaign via emails and social media postings to criticize and expose the

9 misconduct of the Board and Abrams and Highsmith.[24]

10       Because of Plaintiff's successes in litigation and his public campaign against the Board

11 and its counsel, the FAC asserts that Abrams and Highsmith developed personal animosity

12 against Plaintiff and used their positions to retaliate against Plaintiff. As evidence of this

13 retaliatory intent, Abrams caused to be filed in Board Disciplinary Case No. 13-001 a first

14 amended specification of charges. One of the charges contained therein was Charge 13 which

15 was based upon Plaintiff's non-possession of a current CSR, even though he knew that there

16 was no legal basis for the DPHSS Defendants' failure to renew the CSR.[25]

17 **DISCUSSION**

18 The FAC alleges the following six causes of action:

19   1. Violation of Plaintiff's Civil Rights under 42 U.S.C. § 1983.

20   2. Violation of Plaintiff's right of Free Speech.

21   3. Violation of Plaintiff's right to Privacy and Unlawful Seizure.

22   4. Violation of 10 G.C.A. § 77117.

23   5. Conversion.

24   6. Punitive Damages.

25 _____

26 [23]See Paragraph 47 of the FAC.

27 [24]See Paragraph 48 of the FAC.

28 [25]See Paragraphs 49 and 50 of the FAC.

1    The Second, Third, and Fourth causes of action relate to the Guam Police Department

2    Defendants only and are not at issue with regard to the pending motions. The main issue before

3    the court is whether Plaintiff has sufficiently alleged a cause of action under 42 USC § 1983

4    against the moving Defendants.

5        "Traditionally, the requirements for relief under Section 1983 have been articulated as:

6    (1) a violation of rights protected by the Constitution or created by federal statute,

7    (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law." See

8    *Crumpton v. Gates*, 947 F. 2d 1418, 1420 (9th Cir. 1991). More simply stated, Plaintiff must

9    plead that (1) defendants acting under state law (2) deprived Plaintiff of rights secured by the

10   Constitution or a federal statute. See *Gibson v. United States*, 781 F. 2d 1334, 1338 (9th Cir.

11   1986).

12       The court will apply these requirements with respect to the three separate motions before

13   it and will respond to the motions in the order in which they were filed. For purposes of the

14   present motions, the court will make its recommendations solely on the pleadings contained

15   within the FAC and the attachments thereto.

16   **I. Highsmith's Motion**

17       Highsmith first argues that he did nothing more than merely to respond to a Freedom of

18   Information Act request and to give legal advice to a Board which was considering the renewal

19   of Plaintiff's veterinary license. He moves to dismiss the FAC against him because it fails to

20   meet the pleading standards of *Twombly*[26] and thus fails to state a claim against him upon which

21   relief can be granted. He then argues that he is entitled to qualified immunity because Plaintiff

22   has failed to allege the existence of a constitutional right which his acts violated and that right

23   was not clearly established at the time of his acts. Finally, he argues that he also is entitled to

24   absolute immunity when he gave advice to the Board.

25       In examining Plaintiff's FAC, the court notes that Plaintiff referenced Highsmith in his

26   Factual Allegations (Paragraphs 13 through 51) in Paragraphs 21, 27, 28, 29, 47, 48, and 49. In

27   _____

28       [26]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

Page -8-

his first cause of action, Plaintiff references Highsmith in Paragraphs 54, 55, and 56.

In Paragraph 21, Plaintiff alleges that Highsmith knew that there was no valid basis not to release the CSR to him.

Paragraph 27 alleges that Highsmith violated his First Amendment Constitutional rights because he advised the Board that Plaintiff did not have a current CSR when he knew that the DPHSS defendants had wrongfully and unlawfully failed to release the CSR to Plaintiff. It further alleges that Highsmith's statement was malicious and intended to retaliate against Plaintiff for exercising his right to free speech and right to petition.

Paragraph 28 alleges that Highsmith developed a personal animus against Plaintiff prior to telling the Board not to renew Plaintiff's license. His alleged malicious comment to the Board was in retaliation for Plaintiff exercising his First Amendment rights to free speech and to petition.

Paragraph 29 alleges that by writing a subsequent letter to Plaintiff advising Plaintiff of purported reasons for the non-renewal of his license which were not discussed by the Board, Highsmith demonstrated animosity toward Plaintiff.

Paragraph 47 alleges that Abrams and Highsmith had prosecuted Plaintiff on charges of unprofessional conduct in several disciplinary proceedings before the Board. When Plaintiff sought judicial review, each of those prosecutions vacated the Board's order of discipline on the Board's denial of due process and other violations of Guam law.

Paragraph 48 states that Plaintiff began exercising his right of free speech and to petition by attending Board meetings and asking the Board to take action against other professionals who had violated the law, and otherwise demanding the Board follow the law. It is alleged that Highsmith was present at a number of these Board meetings. Plaintiff began using emails and social media to criticize and expose the misconduct of the Board, Highsmith, and Abrams.

Paragraph 49 alleges that as a result of Plaintiff's assertions of his right to free speech and to petition, Highsmith developed personal animosity against Plaintiff and used his position to retaliate against Plaintiff.

Paragraph 54 alleges that Highsmith knew there was no lawful basis not to renew and

release the CSR to Plaintiff.

Paragraph 55 alleges that Highsmith and the other Defendants knew that DPHSS' failure to renew and release the CSR to Plaintiff would be used as a pretext to wrongfully not renew his license to practice veterinary medicine. Subparagraph (b) of Paragraph 55 states a First Amendment right violation. It alleges that when Highsmith successfully persuaded the Board not to renew Plaintiff's veterinary license due to a lack of a CSR, he knew that the Board had failed to follow applicable Guam statutory law when they had refused to release the CSR to Plaintiff. It is further alleged that Highsmith's request to the Board was intended to retaliate against Plaintiff for exercising his right to free speech and right to petition.

The court will now look at the elements that make plausible a case for the civil rights violation alleged by Plaintiff against Highsmith.

As stated *supra*, the requirements for relief under Section 1983 include the following: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law. See *Crumpton v. Gates*, *supra*.

In order to determine whether Plaintiff has stated a valid claim that his civil rights have been violated by Highsmith, it is necessary for the court to determine the acts that are alleged to have been committed by Highsmith which caused the constitutional harm. The acts that caused the constitutional harm appear to be the statements, or comments made by Highsmith at a Board meeting in relation to Plaintiff's application for renewal of his veterinary practice license before that Board. The Board meeting occurred on December 28, 2012.

Based upon the allegations above, it appears that at a Board meeting in which Plaintiff's veterinary license was up for renewal and a vote by the Board, Highsmith told or commented to the Board that Plaintiff did not have a current CSR in his possession and requested the Board not to renew Plaintiff's veterinary license for that reason, i.e., the lack of a CSR in the possession of Plaintiff. Plaintiff alleges that Highsmith's comments to the Board were "malicious and intended to retaliate" against Plaintiff for exercising his free speech and his right to petition because he knew that Gillan, Nadeau, and Rabago had "wrongfully and unlawfully

Page -10-

1  failed to release the CSR" to Plaintiff.

2      It also appears that in all referenced paragraphs to Highsmith in the FAC, the only acts

3  complained of which constituted a violation[27] of Plaintiff's constitutional rights were rights in

4  relation to the First Amendment.  The due process violations alleged in the FAC relate to the

5  DPHSS Defendants in their refusal to release the CSR to Plaintiff.  While the FAC alleges that

6  Highsmith knew of these constitutional violations by the DPHSS Defendants, knowledge per se

7  is not an element that would make him liable for a due process violation.  There were no acts on

8  his part which constituted a refusal to release the CSR to Plaintiff.  To constitute a civil rights

9  due process violation, the conduct, i.e., the refusal to release the CSR to Plaintiff, must have

10 been proximately caused by Highsmith.  That there were no such acts on the part of Highsmith

11 is evident in the allegations contained in Paragraph 55(e).  Therein, Plaintiff alleged that his

12 right to be free from unreasonable search and seizure was violated by "the clearly arbitrary and

13 unreasonable acts of Abrams and the DPHSS defendants by the use of their own wrongful

14 refusal to renew Dr. Joseph's CSR."

15      The court must also determine the constitutional rights Plaintiff engaged in which

16 resulted in the acts of violation by Highsmith.  The court finds the substance of these

17 Constitutional rights to be enumerated in Paragraph 48.  After the Board began pursuing

18 unsuccessful charges against Plaintiff, he exercised his right of free speech and right to petition

19 by attending meetings of the Board and "asking the Board to take action against other

20 professionals who had violated the law."  Plaintiff also demanded "that the Board follow the

21 law."  Highsmith was present at a number of these meetings.  Plaintiff then "began using emails

22 and social media to criticize and expose the misconduct of the Board, Highsmith, and Abrams."

23      Applying then the traditional requirements for relief under Section 1983 *supra*, Plaintiff

24 must show that his right to free speech and right to petition the Board to prosecute other

25 individuals who had violated the law and to follow the law, his right to the use of emails and

26

27 ────────────────

28      [27]During oral arguments, Plaintiff suggested that Highsmith's comments also violated
   Plaintiff's due process rights.  The FAC, however, makes no specific allegation in that regard.

social media to criticize and expose the misconduct of the Board, Highsmith, and Abrams were violated by Highsmith when he made a statement or comment to the Board that Plaintiff did not have a CSR in his possession when Plaintiff applied for a renewal of his veterinary license. Plaintiff alleges that his First Amendment rights were violated because Highsmith knew that DPHSS had unlawfully withheld the CSR from Plaintiff. The harm to Plaintiff occurred when the Board, in reliance in part upon Highsmith's comment, decided not to renew Plaintiff's veterinary license. In making his comment to the Board, Plaintiff has alleged that Highsmith was retaliating against Plaintiff for exercising his free speech rights in the Board meetings and his subsequent efforts to criticize and expose the Board, Highsmith, and Abrams.

In order to prevail on a Section 1983 First Amendment retaliation claim, "a plaintiff must show: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Buckheit v. Dennis*, 713 F.Supp. 2d of 910, 921 (N.D. Cal. 2010) (citing, *inter alia*, *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300–1301 (9th Cir. 1999)). See also *Pinard v. Clatskanie Sch. Dist.* 6J, 467 F.3d 755, 770 (9th Cir. 2006), *Adkins v. Suba*, 2011 WL 4443225, *So v. Bay Area Rapid Transit*, 2013 WL 5663207.

Has Plaintiff shown a violation of his constitutional rights based upon the facts alleged in the complaint? The court finds that he has not.

The court will analyze these three elements in light of his allegations. First, Plaintiff has properly plead that he was engaged in a protected First Amendment activity. He was attending Board meetings and exercising his rights of speech and petition by asking the Board to prosecute other individuals who had not followed the law and for the Board itself to follow the law. He was also using social media to criticize and expose the misconduct of the Board and Highsmith.

With regard to the second element, Plaintiff alleges that Highsmith commented to the Board that he did not have a CSR in his possession even though he knew that the DPHSS Defendants had wrongfully refused to release the CSR to Plaintiff. Furthermore, Highsmith

successfully persuaded the Board not to renew Plaintiff's veterinary license which was pending a vote before the Board because he had no CSR in his possession. The actions complained of by Plaintiff against Highsmith herein deal with his legal advice to the Board. Did Highsmith's actions cause him to suffer an injury? Plaintiff alleges that Highsmith did in fact cause him an injury because the Board, in part, took his advice and denied Plaintiff's license to renew his veterinary license. The injury Plaintiff complains about, however, was his loss of his ability to practice veterinary medicine. This loss came about not because of Highsmith's comment or legal advice to the Board but because of the Board's actions in deciding not to renew his veterinary license. Analyzed further in relation to Highsmith's actions, did the giving of legal advice or the comment made to the Board chill Plaintiff's ability to continue to attend Board meetings or to criticize the Board or Highsmith for their misconduct? The court finds no chilling effect on Plaintiff because Highsmith's actions did not cause him injury.

With regard to the third element, Plaintiff has not been able to show that Highsmith's adverse action was in response to Plaintiff's exercise of his First Amendment rights. Again, the pleadings show that Highsmith was at the Board meeting because he was the Assistant Attorney General assigned to represent the Board with respect to its legal needs. The Attorney General by law has the duty to provide legal representation for Government of Guam's boards and agencies. Highsmith was in attendance in that capacity, as the legal representative of the Attorney General. The meetings do not show that he attended the meeting as a private citizen but rather to provide representation to the Board as required by his employment. In that capacity, he advised or commented to the Board that Plaintiff did not have a CSR in his possession. Plaintiff also fails to meet the requirements of the third element. Highsmith's response or comment was not in retaliation to Plaintiff's attendance at Board meetings and his response was not directed to Plaintiff. Rather, Highsmith's comment to the Board was in response to the Board's inquiry in relation to Plaintiff's application before the Board to renew his veterinary license. It was not related to his First Amendment activities. Thus, Plaintiff has failed to show in his pleadings a violation of his constitutionally protected rights by Highsmith.

The court finds that Highsmith is also entitled to qualified immunity.

Page -13-

1     Government officials who perform discretionary functions are entitled to qualified

2 immunity as long as their actions could reasonably have been thought consistent with the rights

3 they are alleged to have violated. *Andersen v. Creighton*, 483 U.S. 635, 638 (1987).

4     The U.S. Supreme Court has set forth a two-part analysis to determine claims of

5 qualified immunity made by government officials. *See Saucier v. Katz*, 533 U.S. 194, 201

6 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

7 First, the court must consider whether the facts "[t]aken in the light most favorable to the party

8 asserting the injury . . . show [that] the [defendant's] conduct violated a constitutional right[.]"

9 Second, the court must determine whether the right was clearly established at the time of the

10 alleged violation. *Saucier* mandated that the two steps be resolved in sequence, but the

11 Supreme Court in a later case held that the sequence, while "often appropriate," "should no

12 longer be regarded as mandatory." *Pearson*, 555 U.S. at 236. Rather, the "judges of the district

13 courts and the courts of appeals should be permitted to exercise their sound discretion in

14 deciding which of the two prongs of the qualified immunity analysis should be addressed first in

15 light of the circumstances of the particular case before the court."

16     Furthermore, assuming that Plaintiff did properly plead that Highsmith violated his First

17 Amendment rights, he has failed to show that this right was clearly established at the time of the

18 alleged violation. In order to be denied qualified immunity, Plaintiff must show that Highsmith

19 violated his constitutional right when he made his comment to the Board that Plaintiff did not

20 have a CSR in his possession such that a reasonable person in Highsmith's shoes would have

21 understood that his comment to the Board would have been unlawful. It is said that

22 reasonableness is not a demanding standard. Furthermore, the state of the law would be clearly

23 established or sufficiently clear if it gave notice to a reasonable person in Highsmith's shoes that

24 his comment, statement, or advice to the Board that Plaintiff did not have a CSR in his

25 possession was a violation of Plaintiff's First Amendment speech and petition rights because it

26 was in retaliation for Plaintiff's exercise of such rights. The court finds no clear right existed

27 and assuming its existence, it is not clearly established by law at the time Highsmith allegedly

28 violated Plaintiff's First Amendment rights.

Page -14-

1    Plaintiff, however, suggests that this right was clearly established because Highsmith

2    knew or should have known that the DPHSS Defendants and Abrams had wrongfully refused to

3    release to him his CSR. Plaintiff alleges that Highsmith knew or should have known about the

4    wrongful refusal to release the CSR because he wrote a letter to Plaintiff in response to his

5    Sunshine Act request regarding documentation from the DPHSS Defendants' refusal to release

6    the CSR to him. Highsmith in the letter confirmed that the DPHSS Defendants refused to

7    release the CSR based upon instructions from Abrams. The court notes, however, that the claim

8    against Highsmith is not that he was part of those individuals who refused to release the CSR to

9    Plaintiff, but merely that he knew or should have known that it was being withheld wrongfully

10   when he commented to the Board that Plaintiff did not have a CSR in his possession.

11   Generally, when a person is charged with violating someone's constitutional rights

12   because he knew or should have known that some other person had violated that person's

13   constitutional rights, the claim is made in the context of supervisory liability.

14   The FAC does not allege that Highsmith is the supervisor of Abrams or the DPHSS

15   Defendants. Thus, there cannot be a viable claim against Highsmith based upon knowledge

16   and/or acquiescence. Moreover, the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009),

17   commented on the term "supervisory liability" as a misnomer.

18   
19   
20   
21          Absent vicarious liability, each Government official, his or her title not
       withstanding, is only liable for his or her misconduct. In the context of
       determining whether there is a violation of clearly established right to
       overcome qualified immunity, purpose rather than knowledge is required
       to impose Bivens liability on the subordinate for unconstitutional discrimination,
       the same holds true for an official charged with violations arising from his or her
       superintendent responsibilities.

22   Highsmith's comments to the Board cannot be said to be an unconstitutional act. The

23   comment itself may have constitutional protections. The Board's decision not to renew

24   Plaintiff's veterinary license was a quasi-judicial action and does not subject the Board to a civil

25   rights violation action for damages. Nor can it subject Highsmith, its legal counsel, to a suit for

26   a civil rights action for monetary damages for matters made within the context of that

27   administrative proceeding.

28   Highsmith also argues that he is entitled to absolute immunity because he was engaged

Page -15-

in a quasi-judicial function. Highsmith argues that he was acting as counsel for the Board when he gave legal advice to the Board regarding the status of Plaintiff's CSR when Plaintiff's veterinary license was up for renewal before the Board.

The Board referenced in the FAC is a government of Guam administrative agency. 10 G.C.A. § 12803 provides:

§ 12803. Guam Board of Allied Health Examiners.

(a) Creation. There is established, in and for the government of Guam, a Guam Board of Allied Health Examiners, composed of a representative from each of the professions being examined for licensure of which currently there are nine (9) members nominated and appointed by *I Maga'lahen Guåhan*, with the advice and consent of *I Liheslaturan Guåhan*.
    *I Maga'lahen Guåhan* shall appoint two (2) additional members, one (1) member for the Respiratory Therapist, and one (1) member for the Nutritionist/Clinical Dietician, and shall appoint additional members for any other allied health profession being examined for licensure that the Board includes in its licensing procedure, and specifically recommend to *I Maga'lahen Guåhan* to appoint a board member representative. The Board shall examine applicants for licensure within the allied health professions not having separate Board of Examiners enacted by *I Liheslaturan Guåhan*.

The Board has the authority to promulgate rules and regulations, select and administer licensing examinations, issue or deny initial licenses, and approve or deny applications for license renewal. *See* 10 G.C.A. § 12803(c) (1), (4), (6), and (7). Under subparagraph (8), the Board also has the authority to "receive, review, and investigate reports and complaints received from law enforcement agencies, health care organizations, governmental agencies, insurers and other entities having information pertinent to the professional performance of licensees." More importantly, the Board is authorized to "institute actions in its own name and enjoin violations of the Allied Health Practice Act." 10 G.C.A. § 12803(c)(11). Typical of many agencies within the federal, state, and local governments, the Board has legislative and judicial powers. When the Board met on December 28, 2012 to consider Plaintiff's renewal application to practice veterinary medicine, it met pursuant to its authority under 10 G.C.A. § 12803(c)(7). The Board was exercising its judicial authority.

Agency officials who perform functions analogous to those of a prosecutor are entitled to absolute prosecutorial immunity. Likewise, agency officials who perform functions analogous to those of a judge are accorded absolute immunity. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978); *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 925-26 (9th Cir. 2004); *Buckles v. King Cnty.*, 191 F.3d 1127, 1133-34

(9th Cir. 1999); *Mishler v. Clift*, 191 F.3d 998, 1009 (9th Cir. 1999); *Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999); *Fry v. Melaragno*, 939 F.2d 832, 836-37 (9th Cir. 1991): *LeFer v. Murry*, 978 F. Supp. 2d 1177 (D. Mont., 2013).

Plaintiff alleges he has a property and liberty interest in his CSR and veterinary license and was entitled to due process protections. He argues that Highsmith violated these rights by acquiescing in DPHSS's violations and then seeking to have his veterinary license taken as well based upon DPHSS' violations of those rights.

Plaintiff, however, fails to recognize and acknowledge the setting in which Highsmith acted. It was a meeting before the Board to determine whether or not Plaintiff's application to renew his veterinary license would be granted. At that meeting, the Board, in the exercise of its "judicial" or "quasi judicial" authority, voted not to renew Plaintiff's veterinary license. It is clear from the cases above that agency officials performing functions analogous to those of a judge are accorded absolute immunity. None of the Board members are before the court facing Section 1983 monetary damages. The Board members are immune from Section 1983 monetary damages. Highsmith, while not a member of the Board, was an integral part of that process. Assuming that Highsmith somehow violated Plaintiff's constitutional rights, how can Highsmith be liable for monetary damages to Plaintiff for advice given the Board when the Board members themselves cannot be liable for such monetary damages? Because of the nature of Highsmith's participation in the Board as its legal counsel (assuming he violated Plaintiff's constitutional rights), the court finds that he is entitled to absolute immunity under the above cases.

## II. Abrams' Motion

Abrams has filed his motion herein to dismiss the FAC. Abrams argues that he is entitled to absolute immunity as to all of Plaintiff's claims against him in the FAC. If he is not entitled to absolute immunity, he asserts that he is shielded from liability based upon the doctrine of qualified immunity.

A review of Plaintiff's FAC reveals that he has generally alleged three constitutional violations by Abrams against him. Plaintiff alleges First Amendment, Fourth Amendment, and Due Process violations by Abrams. Plaintiff alleges that Abrams' participation in the wrongful refusal to deliver the CSR to him without any hearing violated his due process rights. Plaintiff further alleges that Abrams' motives in refusing to release the CSR to Plaintiff was in retaliation

for his exercise of his free speech and petition rights because he used emails and social media to expose Abrams' misconduct in his representation of the Board. Abrams' retaliation violated Plaintiff's First Amendment rights. Plaintiff has also alleged that Abrams violated his Fourth Amendment rights because at the time that he obtained the search warrant on behalf of DPHSS, he knew Plaintiff's CSR was being wrongfully withheld and, thus, there was no probable cause for the issuance of the search warrant. Plaintiff further alleges that Abrams violated his First Amendment rights when he obtained the administrative search warrant because he did so in retaliation of Plaintiff's exercise of his First Amendment rights.

### a). Absolute Immunity Argument

Abrams argues he is entitled to absolute immunity. The theory behind absolute immunity is that some officials perform "special functions" which, because of their similarity to functions that would have been immune when Congress enacted Section 1983, deserve absolute protection from damages liability. *Butz v. Economou*, 438 U.S. 478, 508 (1978). In such cases, "the official seeking absolute immunity is justified for the function in question." *Antoine v. Byers & Anderson*, 508 U.S. 429, 432 (1993); see also *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Ewing v. City of Stockton*, 588 F. 3d 1218, 1234 (9th Cir. 2009).

In determining whether the particular actions of government officials qualify for absolute immunity or only the more general standard of qualified immunity, the Supreme Court has applied what is described as a "functional approach" to the problem. *Burns v. Reed*, 500 U.S. 478 (1991). Under this functional approach, the court examines "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988).

Herein, Abrams argues that absolute immunity applies to a government attorney's prosecution of civil actions before administrative agencies and cites the court to *Butz*, supra. In *Butz*, the plaintiff filed a suit against a number of officials in the Department of Agriculture (including the Agriculture Department attorney who had prosecuted the enforcement proceeding) claiming that they had instituted an investigation and an administrative proceeding against him in retaliation for his criticism of that agency. The district court had dismissed the

action on the ground that the individual defendants were entitled to absolute immunity for all discretionary acts within the scope of their authority, but the appellate court reversed and found that the defendants were only entitled to qualified immunity. In analyzing the role of the agency attorney, the Supreme Court stated:

> We can see no substantial difference between the function of the agency attorney in representing evidence in an agency hearing and the function of the prosecutor who brings evidence before a court. . . . If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents. . . . We therefore hold that an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence.

438 U.S. at 516-17.

Abrams asserts that Plaintiff's claims against him all relate to either Abrams' role as disciplinary counsel to the Board or his role as counsel to DPHSS. In these roles, Abrams contends he functioned as the agency attorney and is entitled to absolute immunity under *Butz.*

Abrams' comparison, however, is too broad since immunity attaches to the nature of the function performed, not simply to his identity as an agency attorney. Absolute immunity for prosecutors applies only to those functions that are "intimately associated with the judicial phase of the criminal process," in which the prosecutor is acting as "an officer of the court." *Van de Kamp v. Goldstein*, 555 U.S. at 335, 342 (2009) (quoting *Imbler v. Pachman*, 242 U.S. 409, 430-31 (1976).

Plaintiff disputes Abrams' claim of entitlement to absolute immunity. He argues that when Abrams told DPHSS not to release Plaintiff's CSR, Abrams was not acting as a prosecutor in a disciplinary proceeding since there was no disciplinary proceeding against Plaintiff before DPHSS then. Instead, Abrams was merely giving legal advice to an agency. The mere giving of legal advice to an agency does not entitle an attorney to absolute immunity. See *Burns*, 500 U.S. at 495-96 (state prosecutor was not entitled to absolute immunity for giving legal advice to police, including advice as to whether there was probable cause to arrest a suspect); *Lacey v. Maricopa County*, 693 F. 3d 898 (9th Cir. 2010) (state prisoner not entitled to absolute immunity in connection with issuing grand jury subpoenas and ordering or advising those

Page -19-

making arrests since these are not prosecutorial functions).

Based upon the above cases, Abrams does not enjoy absolute immunity based upon his role as the attorney for DPHSS or the Board. His action in advising DPHSS to withhold the release of Plaintiff's renewed CSR falls outside the scope of those limited functions that would entitle him to absolute immunity. The court thus finds that he is not entitled to absolute immunity.

### b). Qualified Immunity.

If he is not entitled to absolute immunity, Abrams asserts that he is shielded from liability based upon the doctrine of qualified immunity. As stated *supra*, the Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgeralad*, 457 U.S. 800, 818 (1982).

### b.1). The Due Process Violation Claim

When Abrams instructed the DPHSS Defendants not to release the CSR to Plaintiff, would a reasonable person have known that the failure to release the CSR to Plaintiff would be a clear violation of his constitutional rights?

As a general rule due process requires some type of notice and an opportunity to be heard before a person is deprived of a property right. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985).

The FAC shows that Plaintiff submitted a renewal application for his CSR to DPHSS on April 25, 2012. DPHSS caused to be issued an OSC to Plaintiff in response to the renewal application. DPHSS subsequently rescinded the OSC after receiving a letter from Plaintiff. Thereafter the CSR was approved and signed by Nadeau and was also later signed by the Acting Director of DPHSS. After it was signed, a DPHSS worker told Plaintiff's manager that the CSR was ready to be picked up. Rabago then contacted Abrams who instructed her not to release the CSR. Plaintiff made several attempts to obtain the CSR but he was not successful. The DPHSS Defendants refused to provide Plaintiff with any other information regarding why

Page -20-

1    his renewed CSR would not be released other than to instruct him to consult the Attorney

2    General's Office.

3         Plaintiff also sent a Sunshine Act request seeking documentation from DPHSS about the

4    refusal to release his renewed CSR. In a letter dated July 24, 2012, Highsmith responded to

5    Plaintiff's inquiry and confirmed that DPHSS had refused to release the CSR based upon

6    Abrams' instructions.

7         The allegations by Plaintiff in the FAC, taken as true and construed in a light most

8    favorable to Plaintiff, show that Abrams violated a clearly established right. Once DPHSS

9    renewed Plaintiff's CSR, Plaintiff had a right to its possession. Plaintiff had a right to the

10   possession of his CSR even if DPHSS had plans thereafter to initiate action to suspend or

11   revoke his CSR. When DPHSS took no further action against Plaintiff, it was obvious that there

12   was no valid reason for not releasing his CSR and that a refusal to release the CSR was

13   arbitrary. See 9 G.C.A. § 67.305. Thus, Abrams' instructions to DPHSS not to release

14   Plaintiff's CSR was a clear violation of his due process rights.

15                    **b.2).    First Amendment Rights Violation**

16        Plaintiff asserts that Abrams violated his free speech and petition rights when he

17   instructed the DPHSS Defendants not to release the CSR to him because he did so in retaliation

18   for Plaintiff's appearance at board meetings and his use of the social media to criticize and

19   expose the misconduct of Abrams as well as the Board.

20        Plaintiff also asserts that Abrams violated his free speech and petition rights when he

21   applied for an administrative search warrant for Plaintiff's place of business because he did so in

22   retaliation for Plaintiff's appearance at board meetings and his use of the social media to

23   criticize and expose the misconduct of Abrams as well as the Board.

24        To prevail on a Section 1983 First Amendment retaliation claim, "a plaintiff must show:

25   (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's

26   actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness

27   from continuing to engage in that activity; and (3) that the defendant's adverse action was

28   substantially motivated as a response to the plaintiff's exercise of constitutionally protected

Page -21-

conduct."

Viewed in the light most favorable to Plaintiff and further taking the allegations in the FAC as true, the FAC's allegations allege a *prima facie* case against Abrams for violation of Plaintiff's First Amendment rights. Plaintiff was engaged in a constitutional activity when he attended Board meetings and began criticizing and exposing the misconduct of Abrams as well as the Board. Abrams' actions in instructing the DPHSS Defendants not to release the CSR to Plaintiff caused injury to Plaintiff because it affected his ability to practice veterinary medicine since he could not dispense a controlled substance without the CSR registration. Instructing the DPHSS Defendants not to release the CSR to Plaintiff was therefore an adequate chill because Plaintiff was deprived possession of his CSR registration. There was no explanation given for the refusal to deliver the CSR and Abrams' actions were alleged to be arbitrary. Moreover, the FAC alleges that Abrams' motivation in instructing DPHSS not to release the CSR was a response to Plaintiff's exercise of his right of free speech and right to petition in the Board meetings. Thus, with respect to the above alleged facts, the court finds that Plaintiff meets the elements for showing a First Amendment retaliation claim.

With regard to the search warrant application, Abrams' action in obtaining a search warrant to search Plaintiff's place of business also caused him harm. A raid was made on his premises which disrupted the operation of his clinic and interfered with his ability to prepare for an impending court hearing. His camera and video recording devices were also taken.[28] Abrams' actions in obtaining a search warrant was an adequate chill because it was allegedly obtained without probable cause. The FAC also alleges that Abrams had developed a personal animosity against Plaintiff and the actions Abrams undertook above were a response to the exercise of his First Amendment rights.

Thus, the court finds that the FAC, viewed in the light most favorable to Plaintiff, meets the elements for showing a First Amendment retaliation claim in relation to the search warrant application.

---

[28]See Paragraphs 41 and 42 of the FAC.

Page -22-

### b.3). Fourth Amendment Right Violation

Plaintiff asserts that Abrams violated his Fourth Amendment right to be free from unreasonable searches and seizures. The FAC alleges that when DPHSS, through Abrams, applied for a search warrant for Plaintiff's clinic, they knew that they had failed to follow applicable Guam law when they wrongfully refused to release the CSR to Plaintiff. Plaintiff's lack of possession of a CSR was a basis for the search warrant and used as a pretext to obtain the warrant by Abrams even though he knew there was no probable cause for the raid.

If a defendant establishes that a knowingly and intentionally false statement was included in a search warrant and with that affidavit's false material set to one side, the remaining portion is insufficient to establish probable cause, the search warrant must be voided. *Franks v. Delaware*, 438 U.S. 154 (1978).

The FAC alleges that Abrams knew his search warrant application for an administrative search of Plaintiff's work facility was without probable cause because he knew that Plaintiff's CSR was being unlawfully withheld by the DPHSS Defendants.

The Administrative Inspection and Search Warrant[29] for Plaintiff's work facility was issued by the Superior Court of Guam in SP0074-13. The Search Warrant provided that it was made pursuant to a sworn application for the inspection, search for, and seizure of, any controlled substances kept or stored in Plaintiff's facility in violation of law. The Warrant further stated that based upon the supporting affidavit, the "requisite showing of a vital public interest in enforcement of Guam law relating to dispensing of controlled substances has been met" and that probable cause exists to believe that Plaintiff's facility was in violation of the Guam Uniform Controlled Substances Act.

Plaintiff alleges that Abrams knew that his CSR was renewed but that he instructed the DPHSS Defendants not to release it to him. A CSR registration is required under the Guam Uniform Controlled Substances Act in order for a person to dispense or possess controlled substances. 9 G.C.A. § 67.302(b). The FAC further alleges that Abrams prepared the

---

[29]See Exhibit 5 to the FAC.

Case 1:14-cv-00005   Document 52   Filed 08/26/15   Page 23 of 36

1    supporting affidavit used in connection with the administrative Search Warrant and the lack of a

2    CSR was used as a pretext for the search warrant.

3         Viewed in the light most favorable to Plaintiff and taking Plaintiff's allegations as true,

4    the FAC's allegations allege a *prima facie* case against Abrams for violation of Plaintiff's

5    Fourth Amendment rights.  Abrams allegedly knew that the DPHSS Defendants were

6    unlawfully withholding Plaintiff's CSR and if it had been released, there would have been no

7    probable cause for the issuance of the administrative search warrant.

8         **III.    The DPHSS Defendants' Motion**

9         The DPHSS Defendants have also filed a motion herein to dismiss the FAC filed against

10   each of them.  They assert that they are entitled to absolute immunity as to all of Plaintiff's

11   claims against each of them in the FAC.  If they are not entitled to absolute immunity, they

12   further assert that they are shielded from liability based upon the doctrine of qualified immunity.

13   Finally, they assert that the FAC should be dismissed against each of them because it fails to

14   state a claim upon which relief can be granted because (1) it fails to meet the pleading standards

15   of *Twombly* and (2) it fails to allege misconduct by each DPHSS Defendant.

16        A review of Plaintiff's FAC reveals that Plaintiff has alleged several constitutional

17   violations against him by the DPHSS Defendants.  These violations are summarized below:

18        1).  In Paragraph 53(a), Plaintiff alleges that the DPHSS Defendants violated his

19   procedural due process rights because he was deprived of possession of his CSR without a post-

20   deprivation hearing.

21        2).  In Paragraph 53(b), Plaintiff alleges that the DPHSS Defendants violated his

22   substantive due process rights because the decision to withhold his CSR was clearly arbitrary

23   and unreasonable.

24        3).  In Paragraph 54, Plaintiff alleges that the DPHSS Defendants violated his due

25   process rights "not to renew and release" to him his CSR because they knew there was no legal

26   basis for its non-renewal or its release.  The court finds the allegations made herein to be a re-

27   statement of the violation alleged in Paragraph 53(b), i.e., a substantive due process right

28   violation.

Page -24-

4). In Paragraph 55(a), Plaintiff alleges that the DPHSS Defendants violated his Fourth Amendment rights by their knowing and wrongful failure to release the CSR to him which was later used a pretext to obtain a search warrant for his work premises. As such, there was no probable cause for the warrant.

5). In Paragraph 55(c), Plaintiff appears to allege that the DPHSS Defendants violated his right to Equal Protection because DPHSS had never previously obtained a search warrant against a CSR holder on similar grounds and it never previously used a knowing and wrongful failure to release a CSR as a basis for the issuance of a search warrant.

6). In Paragraph 55(d), Plaintiff alleges that the DPHSS Defendants violated Plaintiff's substantive due process rights when they refused to deliver the CSR to him and further using the lack of possession of the CSR as a pretext for the issuance of the search warrant.

7). In Paragraph 55(e), Plaintiff alleges a violation of his right to be free from unreasonable search and seizures. The court finds this allegation to be essentially the same as the allegations in Paragraph 55(a).

The Fourth Amendment protects individuals from unreasonable searches and seizures. The court will now address the arguments by the Defendants.

a).     **Absolute Immunity Argument**

The DPHSS Defendants assert that they are entitled to absolute immunity for their decision not to issue the CSR as a result of the Board's decision to suspend Plaintiff's veterinary license. These Defendants rely upon *Misler v. Clift*, 191 F. 3d 998 (9th Cir. 1999). In *Misler*, the Ninth Circuit found that members of the Nebraska State Medical Board were absolutely immune from liability for acts they committed during a disciplinary hearing. 191 F. 3d at 1005-08. Although the board members were entitled to absolute immunity for quasi-judicial acts, the protection did not extend to its ministerial acts. *Id.* At 1007-1008. Specifically, the Ninth Circuit held that the board's failure to respond to the inquiries from another state's medical board was not entitled to absolute immunity since such an act was in essence an administrative function which entailed the examination of records and the sending of correspondence. The act was not closely associated with the judicial process and thus fell outside the protections of

absolute immunity.

In this matter, Plaintiff argues that the DPHSS Defendants were not acting in a quasi-judicial capacity. Instead their refusal to release the CSR to Plaintiff was an arbitrary refusal to comply with their administrative obligations under Guam statutory law.

Viewed in the light most favorable to Plaintiff, the FAC's allegations do not show that said Defendants were acting in a quasi-judicial capacity when they allegedly refused to release the CSR to Plaintiff. Thus, they cannot claim absolute immunity.

### b). Qualified Immunity

The DPHSS Defendants also argue that the FAC against them should be dismissed based upon the doctrine of qualified immunity. To succeed on the basis of qualified immunity, these Defendants must show that they were government officials performing discretionary functions and their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Plaintiff alleges that these Defendants violated his due process rights because he was deprived of possession of his CSR without the benefit of a hearing and the refusal by said Defendants to release the renewed CSR to him was completely arbitrary.

While there are several violations alleged against the DPHSS Defendants, the basis of these violations all stem from their alleged knowing and wrongful refusal to release the CSR to Plaintiff. It is alleged that this knowing and wrongful refusal violated Plaintiff's due process rights. Due process violations have generally been characterized as procedural and substantive. Plaintiff alleges both types of due process violations.

When Defendants refused to release the CSR to Plaintiff, would a reasonable person have known that the failure to release the CSR to Plaintiff would be a clear violation of the constitutional rights of Plaintiff?

As a general rule due process requires some type of notice and an opportunity to be heard before a person is deprived of a property right. See *Cleveland Board of Education, supra.*

The FAC shows that Plaintiff submitted a renewal application for his CSR to DPHSS on April 25, 2012. DPHSS caused to be issued an OSC to Plaintiff in response to the renewal

Page -26-

1   application.  DPHSS subsequently rescinded the OSC after receiving a letter from Plaintiff.

2   Thereafter, the CSR was approved and signed by Nadeau and was also later signed by the

3   Acting Director of DPHSS.  After it was signed, a DPHSS worker told Plaintiff's manager that

4   the CSR was ready to be picked up.  Rabago then contacted Abrams who instructed her not to

5   release the CSR.  Plaintiff made several attempts to obtain the CSR but he was not successful.

6   The DPHSS Defendants refused to provide Plaintiff with any other information regarding why

7   his renewed CSR would not be released other than to instruct him to consult the Attorney

8   General's Office.

9            The allegations by Plaintiff in the FAC, taken as true and construed in a light most

10  favorable to Plaintiff, show that the DPHSS Defendants violated a clearly established right.

11  Once DPHSS renewed Plaintiff's CSR, Plaintiff had a right to its possession in the absence of

12  any other action or OSC against him.  The DPHSS Defendants knew or should have known this.

13  Thus, the DPHSS Defendants are not entitled to the qualified immunity defense with regard to

14  the basic due process violation allegations against them.

15           That the DPHSS Defendants knew this to be true is evident in the rescission of the OSC

16  issued by Gillan and Nadeau.  The OSC was apparently an attempt by DPHSS not to renew

17  Plaintiff's CSR.  While the OSC required Plaintiff to show cause why his CSR should not be

18  "revoked or suspended," it contained language in the bottom which stated:

19           We would like to point out that if you withdraw your application for renewal of CSR
             Certificate (dated April 24, 2012) in writing to the Division of Environmental Health
20           of this Department then you will not have to answer to this Order to Show Cause.

21           Plaintiff responded that an OSC issued in relation to a CSR renewal application had to

22  be filed 30 days prior to the expiration of the CSR registration.  9 GCA § 67.305.  After having

23  been apprised by Plaintiff of the time limitations provided by statute for the issuance of an OSC

24  in relation to a CSR renewal application, Gillan and Nadeau knew that the OSC they had issued

25  was not in compliance with law and thus rescinded it.

26           Defendants seem to argue that there was confusion as to whether Plaintiff could have a

27  CSR while his license to practice veterinary medicine on Guam had been suspended effective

28  April 27, 2012 by the Guam Board of Allied Health Examiners.  The OSC which Plaintiff

Page -27-

received and later rescinded did make reference to this veterinary license suspension by the Board as a basis for the non-renewal of Plaintiff's CSR. Once Gillan rescinded the OSC, he had two options. He could process the CSR renewal application and issue and release it or institute another OSC which would seek to suspend or revoke Plaintiff's CSR based upon the Board's suspension of his veterinary license. In either case, Plaintiff would have been entitled to a release of his renewed CSR. If DPHSS had decided to pursue the latter option, Plaintiff still would be entitled to the CSR subject to a possible future suspension or revocation of that license. By not pursuing the latter option, the DPHSS Defendants knew or should have known it had no authority to hold on to the CSR and not release it to Plaintiff.

A reasonable person in Defendants' shoes would have known then that their conduct did violate clearly established statutory or constitutional rights of Plaintiff since they were holding on to Plaintiff's CSR even after his renewal application was approved. Again, the court reiterates that if the Defendants believed that Plaintiff's veterinary license suspension carried with it the suspension or revocation of his CSR, they could not just hold on to the CSR and not have some basic proceeding which would have allowed Plaintiff an opportunity to be heard and to challenge that belief. Defendants' actions in withholding the CSR have been alleged to be arbitrary. A reasonable person would have known these actions clearly violated Plaintiff's due process rights.

### c). Failure to state a claim

The DPHSS Defendants also argue that the FAC fails to state a claim upon which relief can be granted because (1) it fails to meet the pleading standards of *Twombly* and (2) it fails to allege misconduct by each DPHSS Defendant.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F. 3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dep't*, 901 F 2d 696, 699 (9th Cir. 1988). To avoid dismissal, a complaint must contain "only enough facts to state a claim for relief that is

Page -28-

1  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that

2  allegations in a complaint are accepted as true does not apply to legal conclusions or conclusory

3  factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the

4  elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

5  (Citing *Twombly*, 550 U.S. at 555.)

6       To show that the plaintiff is entitled to relief, the complaint must permit the court to

7  infer more than the mere possibility of misconduct. *Id.* ("The plausibility standard is not akin to

8  a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

9  acted unlawfully."). "A claim has facial plausibility when the plaintiff pleads factual content

10 that allows the court to draw the reasonable inference that the defendant is liable for the

11 misconduct alleged." *Id.* (Citing *Twombly*, 550 U.S. at 556.)

12       In deciding a Rule 12(b)(6) motion, courts generally only look to the complaint and

13 documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F. 3d 977, 980 (9th

14 Cir. 2002). The FAC alleges that the DPHSS Defendants violated Plaintiff's Due Process

15 rights, his Fourth Amendment rights, and his Equal Protection rights. The court will first

16 examine the due process violations.

17       **c.1).    Due Process Violation Allegations as to Gillan**

18       The FAC alleges that Plaintiff submitted his CSR application renewal to DPHSS on

19 April 25, 2012. His current CSR was set to expire on April 30, 2012. His current CSR was

20 signed by Gillan and Nadeau.[30] Rather than renewing his CSR, Gillan and Nadeau issued

21 Plaintiff an OSC as to why his CSR should not be renewed because his veterinary license had

22 just been suspended by the Board. The OSC was dated May 4, 2012. Plaintiff responded to the

23 OSC and advised DPHSS that the OSC was untimely under 9 G.C.A. § 67.305(a).

24       On May 9, 2012, Gillan wrote to Plaintiff and rescinded the OSC. The letter also

25 advised Plaintiff that his renewal CSR application would be processed accordingly, and that

26 Plaintiff would be notified once it was finalized. If Plaintiff had any further inquiries, he was to

27

28       [30]See Exhibit 1 to FAC, Plaintiff's Controlled Substance Registration Certificate.

Page -29-

1 contact Rabago.

2 On May 31, 2012, the CSR Certificate for Plaintiff was reviewed and approved by

3 Nadeau. Thereafter, on June 4, the CSR Certificate was signed by Leo Casil, the Acting

4 Director of DPHSS.[31] The same day, an employee of DPHSS contacted the manager of

5 Plaintiff's clinic and advised him that the CSR was ready to be picked up. The manager

6 requested that the CSR be mailed to Plaintiff. However, instead of mailing the CSR to Plaintiff,

7 Rabago contacted Abrams who instructed her not to release the CSR. Plaintiff alleges that the

8 DPHSS Defendants knew there was no legal basis not to release the CSR to Plaintiff.

9 On June 25, 2012, Plaintiff's manager went to DPHSS to pick up the CSR. DPHSS

10 refused to release the CSR and told the manager to contact the Office of the Attorney General.

11 On the same day, Nadeau emailed Gillan about the refusal to release the CSR to Plaintiff. The

12 email was also sent to Abrams who instructed both men not to release the CSR. Plaintiff

13 alleged that at that time, Gillan, Nadeau, and Abrams knew that there was no lawful basis not to

14 release the CSR, violating Plaintiff's right to procedural and substantive due process, and

15 affected his ability to practice his profession and earn a living.[32]

16 The FAC alleges that these Defendants refused to release the CSR to Plaintiff and that

17 they further knew there was no legal basis not to release the CSR to him.

18 Gillan argues that the FAC fails to show specific conduct on his part that he refused to

19 release the CSR other than to references in the FAC of his refusal which he argues are merely

20 conclusory. He argues that the FAC does not allege that he is personally responsible for

21 releasing the CSR nor does it allege that he personally instructed anyone not to release it to

22 Plaintiff. Moreover, he argues that Guam law does not place the responsibility of releasing a

23 CSR upon him other than that it should be released.

24 Viewing the FAC in the light most favorable to Plaintiff and construing the allegations

25 of material fact therein in the light most favorable to the non-moving party, the court finds that

26 _____

27 [31]See Paragraph 18 of the FAC.

28 [32]*See* Paragraph 20 of the FAC.

Page -30-

it sufficiently pleads factual content that allows the court to draw reasonable inferences that Gillan is liable for the misconduct alleged. Gillan appears to be a necessary signatory to every CSR as he signed Plaintiff's prior CSR Registration. Gillan instituted the OSC against Plaintiff as a means not to renew his CSR application because Plaintiff had just recently had his veterinary license suspended. Gillan, however, rescinded the OSC when he was told that it was not timely under Guam law. Gillan advised Plaintiff that his renewal application would be processed. Gillan knew from Nadeau who had emailed him on June 25, 2012 that DPHSS refused to release the CSR to Plaintiff. Gillan knew what was ongoing with regard to the Department's handling of Plaintiff's CSR. As the head of the department, Gillan was not subject to any obedience with regard to Nadeau's instructions not to release the CSR. He could have rescinded that instruction since Nadeau was his subordinate. The court must make an inference that he concurred in the decision not to release the CSR to Plaintiff since he had been involved in the renewal process since the beginning and did nothing to prevent its release. His decision to rescind the OSC was indication that he knew there was no valid reason not to release the CSR since no subsequent OSC issued to Plaintiff thereafter. He was in a position of authority to allow the release of the CSR to Plaintiff and he did not.

### c.2). Due Process Violation Allegations as to Nadeau

The court incorporates herein all the references made *supra* in the Gillan analysis. Nadeau also appears to be a necessary signatory to the CSR since he signed Plaintiff's CSR that was expiring April 30, 2012. Nadeau also signed the OSC that was issued to Plaintiff which asked him to show cause why the CSR renewal application should not be denied because of Plaintiff's revocation of his veterinary license. The appearance of Nadeau's name on the CSR registration and on the OSC against Plaintiff show that he was a person with authority in these matters. As the FAC alleges, he is the head of the Environment Health Division of DPHSS. The FAC also alleges that Nadeau instructed Rabago not to release the CSR to Plaintiff. Thus, the court finds that the FAC alleges misconduct on the part of Nadeau in relation to Plaintiff's due process violations. Once the Department decided to renew Plaintiff's CSR application, he knew there was no valid reason to deny possession of the CSR to Plaintiff especially since

Case 1:14-cv-00005   Document 52   Filed 08/26/15   Page 31 of 36

1  DPHSS undertook no further action against Plaintiff.  Moreover, Nadeau became a part of those
2  individuals who insisted that the CSR not be released to Plaintiff.

3              **c.3).    Due Process Violation Allegations as to Rabago**

4              In her motion to dismiss, Rabago states that the only allegation against her in the FAC
5  was that on or about June 4, 2012, she "contacted Abrams, who instructed her not to release the
6  CSR."  Approximately five months later on December 5, 2012, she spoke to Nadeau "as to their
7  refusal to release the CSR to Dr. Joseph.  Nadeau told Rabago not to release the CSR."

8              In Paragraph 15, Plaintiff has alleged that when he applied for a renewal of his CSR
9  registration, the DPHSS Defendants did not issue a renewal CSR to him.  Rather they caused to
10  be issued an OSC to him.  In Paragraph 24, Plaintiff has also alleged that following rescission of
11  the OSC, the DPHSS Defendants did not cause another OSC to be issued against Plaintiff.
12  Thus, these Defendants knew that there was no valid reason for refusing to release the CSR to
13  Plaintiff and their actions violated his right to procedural and substantive due process.

14              A pivotal allegation in Plaintiff's due process violation claim against the DPHSS
15  Defendants is that they refused to release the CSR to him.  The court has found that allegation to
16  be factually inferred with regard to Gillan and Nadeau.  The court, however, has difficulty
17  finding conduct that infers the same type of action on the part of Rabago.

18              In order to obtain relief under Section 1983, Plaintiff must show that the violation of his
19  due process rights violation were "proximately caused" by Rabago.  Unlike the factual
20  allegations against Gillan and Nadeau regarding the release of Plaintiff's CSR, Plaintiff has not
21  plead any factual content that would allow this court to infer misconduct on the part of Rabago.
22  Plaintiff has alleged that Rabago along with Gillan and Nadeau did not issue a renewal of his
23  CSR to him.  The court finds this allegation to be conclusory as to Rabago.  There are no factual
24  allegations in the FAC that indicate that Rabago had the authority to issue a CSR registration.
25  Unlike Gillan and Nadeau, her name is not listed as a signatory to Plaintiff's CSR attached to
26  the FAC.  Unlike Gillan and Nadeau, Rabago did not sign the OSC issued to Plaintiff which
27  required Plaintiff to show cause why his renewal CSR application should not be denied.

28              Similar misconduct is alleged against the DPHSS Defendants.  Plaintiff has alleged that

Page -32-

these Defendants refused to release the CSR to him. There is no factual allegation in the FAC that illustrates that Rabago participated in any action which constituted a refusal to release the CSR to Plaintiff. In fact, in both scenarios in which she inquired about releasing the CSR she was instructed first by Abrams and then by Nadeau not to release the CSR.

The FAC alleges that she knew that there was no valid reason not to release the CSR to Plaintiff and it places misconduct on the part of Rabago based upon that knowledge. But as the court has stated *supra*, knowledge by an individual that Plaintiff's CSR is being withheld unlawfully does provide Section 1983 liability. It is conduct which proximately causes the harm, i.e., the withholding of the CSR from Plaintiff without providing him due process. There is no allegation that Rabago participated in that conduct. The fact that she inquired whether Plaintiff's CSR should be released does not make her conduct actionable under Section 1983. Moreover, an inquiry whether Plaintiff's CSR should be released does not make that conduct illegal or unlawful. The action becomes unlawful only when the person refuses to release to Plaintiff his renewed CSR without providing him due process. The only inference that the court can make from the FAC allegations is that Gillan and Nadeau were the two persons that could have provided Plaintiff his due process rights. They were the persons who had that authority as they were the two persons who signed his CSR and issued the OSC to him.

Thus, the court finds that Rabago's motion to dismiss the FAC against her because it fails to state a claim upon which relief may be granted should be granted by the court as to all causes of action alleged against her. As the court has stated above, all of the subsequent allegations of constitutional violations against the DPHSS Defendants are premised upon and stem from the due process violations. If a DPHSS Defendant has not violated Plaintiff's due process rights, that defendant would have no liability for other constitutional violations which stem from the due process violations.

### c.4). Fourth Amendment Violations as to Gillan and Nadeau

Paragraphs 55(a) and (e) allege that the DPHSS Defendants violated Plaintiff's Fourth Amendment rights by their knowing and wrongful failure to release the CSR to him which was later used a pretext to obtain a search warrant for his work premises. As such, there was no

Page -33-

1    probable cause for the warrant.

2          These allegations are generally based upon the more detailed allegations made by

3    Plaintiff in Paragraphs 34 and 35.  Paragraph 34 alleges that a warrant was obtained in the name

4    of the DPHSS Defendants, but "instigated by Abrams."  These Defendants are alleged to have

5    "aided and abetted Abrams by acquiescing in Abrams' desire to obtain a warrant" on the

6    grounds that Plaintiff did not have a CSR in his possession.  Defendants knew that there was no

7    valid basis not to release the CSR to Plaintiff.  Paragraph 35 alleges that at Abrams' direction,

8    Katherine Duenas, signed an affidavit and verified an application, prepared by Abrams for a

9    search warrant.  It also alleges that Duenas was designated by Gillan to execute the warrant and

10   to conduct the search and seizure pursuant to the warrant.  It further alleges that Abrams

11   instigated the processing of obtaining the warrant in retaliation for Plaintiff's exercise of his

12   First Amendment rights.

13         The allegations made by Plaintiff do not support a violation of his Fourth Amendment

14   rights by the DPHSS Defendants.  The FAC describes how Abrams initiated the process for

15   obtaining the warrant and how Duenas signed the affidavit, but there are no specific allegations

16   as to the actions of the DPHSS Defendants.  The FAC merely concludes that the warrant was

17   obtained on behalf of the DPHSS Defendants without specific allegations to support it.  The

18   FAC also alleges that the DPHSS Defendants acquiesced in the warrant without specific facts

19   supporting it.  Thus, the court finds that the Fourth Amendment violation against the DPHSS

20   Defendants, i.e., the remaining two Defendants, Gillan and Nadeau, be dismissed for failure to

21   state a claim upon which relief may be granted.

22                    **c.5).     Equal Protection Violation as to Gillan and Nadeau**

23         In Paragraph 55(c), Plaintiff alleges that the DPHSS Defendants violated his right to

24   Equal Protection because DPHSS had never previously obtained a search warrant against a CSR

25   holder on similar grounds and it never previously used a knowing and wrongful failure to

26   release a CSR as a pretext for the issuance of a search warrant.  Plaintiff further alleges that

27   there "was no rational reason" to treat him differently from other CSR holders.

28         In order to state a Section 1983 claim for a violation of the Equal Protection Clause, a

Page -34-

plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, at 686 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). However, when an equal protection claim is premised on unique treatment rather than on a classification, the U.S. Supreme Court has described it as a 'class of one' claim. *N. Pacific LLC v. City of Pacific*, 526 U.S. 478, 486 (9th Cir. 2008). In order to claim a violation of equal protection in a class of one claim, the plaintiff must show that the defendant intentionally, and without a rational basis, treated the plaintiff differently from others who are similarly situated.

In *Williams v. County of Alameda*, 26 F. Supp. 3d 925, 941, (2014), the District Court concluded that plaintiff stated a Section 1983 violation of his equal protection under the class of one theory. Plaintiff alleged that he was arrested solely because he was an African-American and despite specific knowledge by the officer defendants who arrested him that his fiancee had engaged in the same conduct as he did, the officer defendants arrested him and not her. Thus, the officer defendants intentionally treated him differently from another similarly situated person, his fiancee.

The allegations made by Plaintiff in the FAC do not support a violation of his Equal Protection Right by the DPHSS Defendants. The FAC states that when Abrams and the DPHSS Defendants sought the warrant, these Defendants had never previously sought and obtained a warrant against any other holder of a CSR on similar grounds. The FAC contains no specific allegations in this regard. There is no reference to a specific CSR holder in Plaintiff's similar shoes who was treated differently. Plaintiff's allegation that there was no rational basis to treat him differently from other CSR holders is conclusory.

Thus, the court finds that the FAC's allegations that Plaintiff's Equal Protection Rights were violated by the DPHSS Defendants, i.e., the remaining two Defendants, Gillan and Nadeau, be dismissed for failure to state a claim upon which relief may be granted.

## RECOMMENDATIONS

IT THEREFORE IS RECOMMENDED that the District Court issue an order as follows:

1. That Highsmith's motion to dismiss the FAC against him be granted and that the First

Page -35-

Amendment violation claims against Highsmith be dismissed without leave to amend.

2. That Abrams' motion to dismiss the FAC against him be denied.

3a. That Gillan's motion to dismiss the FAC against him be granted in part and denied as to those claims alleging a due process violation. It is further recommended that the Fourth Amendment and Equal Protection claims against Gillan be dismissed subject to leave to amend if Plaintiff is able to provide non-conclusory facts.

3b. That Nadeau's motion to dismiss the FAC against him be granted in part and denied as to those claims alleging a due process violation. It is further recommended that the Fourth Amendment and Equal Protection claims against Nadeau be dismissed subject to leave to amend if Plaintiff is able to provide non-conclusory facts.

3c. That Rabago's motion to dismiss the FAC against her be granted and that all claims against her in the FAC be dismissed without leave to amend.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Aug 26, 2015**

**NOTICE**

 **Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**

Case 1:14-cv-00005   Document 52   Filed 08/26/15   Page 36 of 36