**IN THE DISTRICT COURT
FOR THE TERRITORY OF GUAM**

| | |
|---|---|
| JOEL JOSEPH, | Case No.: 14-cv-00005 |
| Plaintiff, | |
| vs. | **ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION, ON REPORT AND RECOMMENDATION, AND DEFENDANTS' MOTIONS TO DISMISS** |
| BENJAMIN ABRAMS, JAMES GILLAN, ROSANNA RABAGO, M. THOMAS NADEAU, and DOES I through L,[1] | |
| Defendants. | |

## I.    INTRODUCTION

Before the Court are Defendants' motions to dismiss the first amended complaint (ECF Nos. 28, 29, 30), the Report and Recommendation ("R&R") on the motions to dismiss (ECF No. 52), and the parties' objections to the R&R.  (ECF Nos. 55, 56, 59.)

The Court has considered the briefs and supporting materials submitted by the parties, their arguments at the hearing, and rules on the motions and objections to the R&R below.

## II.    BACKGROUND

### A.  Factual Background

The factual background is thoroughly recounted in the R&R and is adopted.  Nonetheless, the Court will recount some of the background relevant to addressing the motions to dismiss and the objections to the R&R.

---

[1] The case caption has been amended to reflect the correct spelling of Defendant Gillan's name and that David Highsmith was dismissed with prejudice upon the stipulation of the parties.  (*See* ECF Nos. 71, 80, 81.)

The acts giving rise to this lawsuit began when Plaintiff Joel Joseph sought to renew his controlled substances registration certificate ("CSR") that expired on April 30, 2012. (First Amended Complaint ("FAC") ¶ 14, ECF No. 26; CSR Certificate, Ex. 1 to FAC, ECF No. 26 at 23.) Joseph submitted a renewal application to the Department of Public Health and Social Services ("DPHSS") five days prior to the expiration date. (Ex. 2, ECF No. 26 at 24.) In response, DPHSS issued an order to show cause, signed by Defendants Gillan and Nadeau, on the ground that Joseph's license to practice veterinary medicine had been suspended on April 27, 2012, by the Guam Board of Allied Health Examiners, and the Guam Uniform Controlled Substances Act permitted only practitioners to hold CSR certificates. (FAC ¶ 15; Ex. 3, ECF No. 26 at 25–26.) After receipt of a response from Joseph, which stated the order to show cause was untimely under 9 G.C.A. § 67.305(a)[2] (FAC ¶ 16), DPHSS rescinded the order to show cause via letter signed by Gillan. (Ex. 4, ECF No. 26 at 27.) The letter stated that Joseph's "renewal application for CSR will be processed accordingly," and that he would be "contacted once it is finalized." (*Id.*)

In June 2012, DPHSS allegedly contacted Joseph's clinic to inform him that the renewed CSR was ready to be picked up. (FAC ¶ 19.) After the manager of the clinic, Kenneth Massey, requested that the CSR be mailed, Defendant Rabago allegedly contacted DPHSS's legal counsel, Defendant Abrams, as to whether this was permissible, and Abrams instructed Rabago not to release the CSR despite knowing there was no lawful basis for the denial. (*Id.*) Subsequently, Massey went to DPHSS to retrieve the CSR and the DPHSS Defendants refused to release it. (*Id.* ¶ 20.)

---

[2] Section 67.305(a) requires an order to show cause to issue at least thirty (30) days prior to the date on which the CSR certificate will expire. Joseph submitted his renewal application on April 25, 2012, five days before it expired, and the order to show cause issued on May 4, 2012, four days after the certificate expired.

2

Separately, Joseph submitted an application to renew his license to practice veterinary medicine, which expired at the end of 2012. (FAC ¶ 26.) The renewal application was sent to the Board of Allied Health Examiners on November 20, 2012. (*Id.*) The Board voted not to renew the license after learning from their legal counsel, former Defendant Highsmith, that Joseph lacked a current CSR. (*Id.* ¶ 27.) After this vote, Joseph filed a petition with the Superior Court of Guam, alleging that the Board violated his due process rights by not affording him notice and an opportunity to be heard prior to denying the renewal of his license. (*Id.* ¶ 30.) In January 2013, the Guam Superior Court issued an order permitting Joseph to practice while the case was pending but restricting use of controlled substances based on DPHSS's failure to release his new CSR and requiring him to permit inspection of his clinic by DPHSS during normal business hours. (*Id.* ¶ 31; Order, Case No. SP0001-13, ECF No. 55 at 27–28.)

Approximately five months after Joseph filed the petition, and while the petition was still pending with the Superior Court, DPHSS obtained an administrative warrant to search Joseph's Wise Owl Clinic. (Warrant, Ex. 5, ECF No. 26 at 28–31; FAC ¶ 33.) The Clinic was searched on May 8, 2013, and some items were seized. (*Id.*)

Following these events, the Guam Superior Court held that the Board had violated Joseph's procedural due process rights by failing to inform him before the Board's meeting that there were issues with the renewal of his veterinary license. (Findings of Fact and Conclusions of Law, Ex. 6, ECF No. 26 at 33–35.) The Superior Court ordered the Board to reconsider Joseph's renewal application. (*Id.* at 39.)

**B. Procedural Background**

Joseph filed a complaint on April 18, 2014 and a first amended complaint on July 11, 2014. (ECF Nos. 1, 26.) He alleges that Defendants violated his procedural and due process rights by failing to renew and later withholding the renewed CSR, and his Fourth Amendment rights by wrongfully searching his clinic and seizing his property. (FAC ¶¶ 53(a)–(b), 55(a), (d)–(e).) Further, Defendant Abrams and former Defendant Highsmith allegedly violated his First Amendment rights by retaliating against him for exercising his rights to free speech and to petition. (*Id.* ¶ 53(c), 55(b).) In addition, the DPHSS Defendants violated Joseph's equal protection rights by treating him differently from other CSR holders without a rational basis. (*Id.* ¶ 55(c).) Joseph also alleges that Abrams, Gillan, Rabago, Nadeau, and unknown Guam Police Department ("GPD") officers were liable for conversion because they seized files, financial records, and computers and never returned them. (*Id.* ¶ 71.) The remaining causes of action against the GPD are not relevant to the pending motions.

Abrams filed a motion to dismiss, contending that he is entitled to absolute and qualified immunity and Plaintiff has otherwise failed to state a claim. (Abrams Motion, ECF No. 29.) Highsmith filed a motion to dismiss on similar grounds. (Highsmith Motion, ECF No. 28.) The DPHSS Defendants also filed a motion to dismiss on the same grounds. (DPHSS Motion, ECF No. 30.)

The Magistrate Judge issued a Report and Recommendation on the three motions to dismiss. (ECF No. 52.) First, with respect to Abrams, the R&R recommends finding that he is not entitled to absolute or qualified immunity, and further recommends that Plaintiff has sufficiently stated his constitutional claims against Abrams. (R&R 17–24.) Second, the R&R recommends granting

4

Highsmith's motion to dismiss. (*Id*. at 8–17.) Next, the R&R recommends that the DPHSS Defendants' motion to dismiss be granted in part and denied in part. (*Id*. at 18–36.) Specifically, the R&R recommends granting the motion to dismiss in full with respect to Rabago. (*Id*. at 32–33.) Additionally, it recommends finding that Gillan and Nadeau are not entitled to immunity, that Plaintiff has stated a due process violation against the two of them, but that Plaintiff has failed to state Fourth Amendment and equal protection claims against them. (*Id*. at 18–36.)

After the R&R issued, all parties, except Rabago and Highsmith, submitted objections. (ECF Nos. 55, 56, 59.)

### III.  LEGAL STANDARD

When a party objects to a magistrate judge's report and recommendation, the district court judge 'shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* She need not review any parts that are not objected to. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014)

(quoting *Twombly*, 550 U.S. at 555). Thus, a court must "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then consider whether the well-pleaded allegations could "plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678-79). If the well-pleaded allegations "are merely consistent with a defendant's liability," the plausibility threshold has not been satisfied. *Id.* (quoting *Iqbal*, 556 U.S. at 678.) But "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV.    ANALYSIS

The Magistrate Judge's R&R addresses the three pending motions to dismiss from Defendants. Defendant Highsmith has since been dismissed with prejudice from the case by stipulation of the parties (ECF Nos. 71, 80, 81) and his motion to dismiss (ECF No. 28) is therefore denied as moot. The portion of the R&R addressing Highsmith's motion is not adopted and Plaintiff's objections to the R&R's findings as to Highsmith's motion are denied as moot.

### A.  Abrams' Motion to Dismiss

The R&R recommends denying Abrams absolute and qualified immunity and finding that Joseph has adequately pleaded the legal claims. (*See* R&R 36.) Abrams objects to the R&R on four grounds. (Abrams Objections, ECF No. 55.)

#### i.    Objection 1: Failure to Consider Documents

Abrams first objects to the R&R on the ground that it fails to take into account the Guam Superior Court documents directing Joseph to refrain from using controlled substances and the affidavit from Katherine Duenas in support of the administrative search warrant. (Abrams Objections

6–11.) Abrams submits that these documents undermine Joseph's theory of causation and thereby demonstrate that the claim regarding lack of probable cause to obtain the administrative search warrant fails the *Iqbal* standard of plausibility. (*Id.* at 10–11.) Although Abrams does not precisely identify which of Plaintiff's claims he is addressing, the Court construes the objection to address the Fourth Amendment claim. Plaintiff responds that he did not hide in the first amended complaint that he was under a court order not to use or prescribe controlled substances and therefore the Magistrate Judge did not err in failing to discuss the January 18, 2013 order. (Pl's. Resp. to Abrams Obj. 12–13, ECF No. 61.)

The R&R states that because Plaintiff alleged that Abrams knew the search warrant was based on a false statement – that Joseph's CSR certificate was invalid – Plaintiff had stated a claim for a Fourth Amendment violation. (R&R 23–24.)

In the first amended complaint, with respect to the administrative warrant, Joseph alleges that Abrams "instigated" the warrant by requesting DPHSS to obtain one on the grounds that Joseph's CSR was invalid. (FAC ¶ 34.) Further, Joseph alleges that Abrams directed Katherine Duenas to prepare an affidavit and warrant application for the Wise Owl Animal Clinic. (*Id.* ¶ 35.) The warrant itself is attached to the complaint (Ex. 5 to FAC, ECF no. 26 at 28–31), but the underlying affidavit is not. However, the warrant, signed by a judge of the Guam Superior Court, relies on the affidavit, which Abrams has attached to his motion to dismiss. (Duenas Affidavit, ECF No. 29 at 18–35.)

A court may consider documents unattached to a complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011)

(quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

Here, there is no dispute that the Guam Superior Court Order, Duenas affidavit, and the warrant application are referred to in the first amended complaint (see FAC ¶ 35), the warrant is central to Joseph's Fourth and First Amendment claims, and none of the parties disputes that the documents are authentic. Accordingly, the Court finds that the Magistrate Judge should have considered them in the R&R, as a review of the documents would have impacted the analysis, as set forth in detail below. Because he did not, Abrams's objection is sustained.

The Duenas affidavit states that she believes probable cause exists based on what she observed while inspecting the Wise Owl clinic and which is summarized in her investigate report attached to the affidavit. (Duenas Affidavit ¶¶ 5, 6, ECF No. 29 at 19.) The investigative report indicates that Joseph consented to the inspection, as required by court order, and the inspectors concluded that he likely violated the Guam Uniform Controlled Substances Act because (1) he failed to provide inventory records and invoices; (2) possessed numerous controlled substances without a valid CSR; (3) dispensed controlled substances without a valid CSR; (4) and possessed and distributed while knowing he lacked a valid CSR, (Duenas Report, ECF No. 29 at 24–25.) Further, Duenas wrote that Joseph violated the Food, Drug and Cosmetic Act by altering or relabeling drug packaging, and dispensing drugs not approved for sale or use in the United States. (*Id*. at 25.) In addition, records indicated that Joseph's DEA certificate expired on January 31, 2012, and his clinic had administered controlled substances fifteen (15) times in March 2013. (*Id*. at 27.)

This Court is not bound by the probable cause finding of the Superior Court because the finding

was not made in the context of a qualified immunity or constitutional violation inquiry, and the Superior Court did not consider whether any of the information in the warrant application was placed there at Abrams's instigation. *See Lombardi v. City of El Cajon*, 117 F.3d 1117, 1121 (9th Cir. 1997) (state court suppression hearing not binding in section 1983 case because the issue was not identical to issue of qualified immunity). Thus, the Court will consider whether there was probable cause for the search warrant absent all references to Joseph's allegedly invalid CSR. Probable cause exists where the facts and circumstances are "sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed, . . . and that evidence bearing on that offense will be found in the place to be searched." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009).

Here, even discounting all references to Joseph's invalid CSR as a basis for the administrative search warrant, the Court finds that probable cause existed for the warrant. First, as set forth above, Joseph was required by the Guam Superior Court to "not use or prescribe any medications which require a CSR" from January 2013 onward while the legal proceedings regarding his licenses were pending in that court. (Order, Case No. SP0001-13, ECF No. 55 at 27–28.) Despite this order, his clinic administered controlled substances fifteen times in March 2013. Moreover, the inspectors observed that he possessed drugs not authorized for sale in the United States, that his DEA certificate had expired, and that he had improperly mixed or relabeled drug packages. Finally, the controlled substances were, without dispute, in the Wise Owl Clinic. Accordingly, there was at least, if not more than, a fair probability that Joseph was possessing and administering controlled substances at the Wise Owl clinic in violation of a court order as well as federal and Guam law.

Because probable cause existed to obtain the search warrant even absent Abrams's alleged involvement and without reference to Joseph's CSR, Plaintiff has failed to state a claim for Fourth Amendment violation as to Abrams. *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231 (9th Cir. 2006). Accordingly, Abrams's objection is sustained and the Fourth Amendment claims against him are dismissed with prejudice.

### ii. Objection 2: Procedural Due Process Claim

Abrams next objects to the R&R on the ground that the Magistrate Judge overlooked relevant case law in pages 7–10 of his motion to dismiss and the reply brief, which would demonstrate that no claim for due process violations exist "if adequate remedies are available at local law." (Abrams Objections 11–14.) Plaintiff responds that Abrams's argument simply reiterates the submissions in the motion to dismiss and are not specific objections for purposes of Rule 72(b). (Pl's. Resp. to Abrams Obj. 13.)

Regardless of whether Plaintiff's response has merit, the Court has reviewed the materials submitted and finds the authority cited by Abrams is not persuasive. It is true that the R&R did not address the question of whether any post-deprivation remedies existed, and case law is clear that when a deprivation of property has occurred in violation of pretermination procedures, there is no due process claim if "a meaningful postdeprivation remedy for the loss is available." *Raditch v. United States*, 929 F.2d 478, 480–81 (9th Cir. 1991). However, Abrams has not identified any post-deprivation remedies that apply to the alleged procedural due process violation that led to the deprivation of Joseph's CSR certificate.

First, in the reply brief, Abrams cites the Guam Government Claims Act, 5 G.C.A. § 6101 *et*

*seq.*, as providing a sufficient post-deprivation remedy. (Abrams Reply Brief 8–9, ECF No. 37.) However, the section waiving sovereign immunity authorizes actions only for breach of contract and torts that arise from "the negligent acts of its employees." 5 G.C.A. § 6105(a), (b). This section therefore does not cover the acts at issue, which Plaintiff states were *intentional* acts to deprive him of his property. Furthermore, the case cited, *Adkins v. Suba*, Case No. 09-cv-00029, 2011 WL 4443225 (D. Guam Sept. 22, 2011) is unpersuasive. In that case, this Court addressed unlawful seizure of the plaintiff's cell phone by police, and found that the Government Claims Act was an adequate post-deprivation remedy. *Id*. at *7. However, there was no analysis in that case as to whether the Government Claim Act applied to intentional claims and therefore does not resolve whether the remedy provided under the statute is available to Joseph. In fact, the Guam Supreme Court has held that the Act does not "waive sovereign immunity for intentional torts." *Wood v. Guam Power Auth.*, 2000 Guam 18, at *4 (2000). Thus, because Joseph alleges an intentional deprivation of his property, the remedy provided under the Government Claim Act does not apply to his claim and does not provide sufficient post-termination process.

Next, Abrams cites 8 G. C. A. § 35.45(a), which permits an individual to sue for the return of illegally seized property, as a sufficient post-deprivation remedy. (Abrams Reply Brief 9.) However, Joseph is not basing his due process violation on the search and seizure, but on failure to comply with the notice and hearing requirements prior to revoking his CSR certificate. Thus, section 35.45(a) is not applicable and does not remedy the alleged procedural due process violation.

In sum, the Magistrate Judge did not reach an inaccurate legal conclusion despite not addressing the legal authority supplied by Abrams. Having reviewed the analysis of Joseph's

procedural due process claim, the Court adopts the recommended finding that Joseph has sufficiently stated a claim and overrules Abrams's objection.

### iii.    Objection 3: Absolute Immunity

Abrams next objects to the R&R's recommendation that he is not entitled to absolute prosecutorial immunity. (Abrams Objections 14–17.) He contends that the R&R improperly conflates the allegations regarding withholding the CSR with the allegations regarding the administrative search warrant. (*Id*. at 16.) Furthermore, because his legal advice was "filtered through a neutral and detached judicial body," he is entitled to absolute prosecutorial immunity. (*Id*. at 17.) Plaintiff responds that Abrams instructed DPHSS not to release the CSR on multiple occasions, nonetheless informed the Guam Superior Court that Joseph lacked a CSR certificate, and submitted Duenas's materials as the basis for the search warrant despite knowing there was no lawful basis for withholding the CSR and for searching the clinic. (Pl's. Resp. to Abrams Objs. 14–15.)

The R&R held that Abrams is not entitled to absolute immunity because "his action in advising DPHSS to withhold the release of Plaintiff's renewed CSR falls outside the scope of those limited functions that would entitle him to absolute immunity." (R&R 20.) The Court agrees with this conclusion with respect to Abrams's alleged instruction to DPHSS to withhold the CSR. *See, e.g.*, *Burns v. Reed*, 500 U.S. 478, 493 (1991) (holding that a prosecutor is not entitled to absolute immunity when advising police because it is not "intimately connected to the judicial phase" of the process); *Ewing v. City of Stockton*, 588 F.3d 1218, 1233–34 (9th Cir. 2009) (same). Abrams himself appears to admit that giving advice to DPHSS to withhold the CSR is legal advice, which is not an act for which prosecutors are entitled to absolute immunity. (*See* Abrams Objections 15.) The remaining

part of Abrams's objections appear to address his conduct with respect to the search warrant and therefore does not support his claim to absolute immunity with regard to withholding the CSR. Accordingly, the objection to the finding that he is not entitled to absolute immunity for the instruction to DPHSS to withhold the CSR is overruled.

Abrams points out that the R&R does not address absolute immunity with respect to Abrams's alleged involvement in obtaining the administrative search warrant. While this is true, because the Court has already determined above that Plaintiff has failed to state a Fourth Amendment violation, the objection is moot.

### iv.     Objection 4: First Amendment Retaliation Claim

Abrams's final objection is that the R&R failed to appropriately analyze the First Amendment retaliation claim and therefore erred in recommending to the Court that Plaintiff properly stated a claim. (Abrams Objections 17–24.) In particular, Abrams maintains that no allegations support animus or retaliatory motive because the allegations in the first amended complaint are nothing more than speculation. (*Id*. at 18.) Further, Abrams argues that the Magistrate Judge should have considered the Duenas affidavit and supporting documents, which would show the warrant was valid regardless of whether Abrams instigated it. (*Id*. at 21.)

As set forth above, the Court finds that Plaintiff has failed to state a Fourth Amendment violation because probable cause existed to support the search warrant. Abrams argues that because there was probable cause, case law indicates that he is entitled to qualified immunity. (Abrams Objections 24.) The Court agrees. An official is not entitled to qualified immunity if (1) he violated a constitutional right, and (2) if the unconstitutionality of the conduct was clearly established at the

13

time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

In this case, the relevant question is whether a First Amendment retaliation claim based on an alleged Fourth Amendment violation may proceed if there was probable cause to support the search warrant. The two most analogous Supreme Court cases are *Reichle v. Howards* and *Hartman v. Moore*. *Hartman* addressed a claim for retaliatory prosecution, and the Supreme Court held that the lack of probable cause combined with retaliatory motive was reasonable grounds to establish a "prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision." *Hartman*, 547 U.S. 250, 265 (2006). As the Supreme Court emphasized in *Reichle*, "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause." *Reichle*, 566 U.S. 658, 666 (2012). The Supreme Court then went on to consider whether it was clearly established that "an arrest made in retaliation of an individual's First Amendment rights is unlawful, even if the arrest is supported by probable cause." *Id*. The Supreme Court indicated that it was unclear if the rule in *Hartman* should extend to arrests, and held only that it was not clearly established that the rule applied to retaliatory arrests. *Id*. at 668–69. In view of this precedent, which has not clearly extended *Hartman*'s rule to other retaliatory acts taken by prosecutors that are also supported by probable cause, the Court finds it is not clearly established that Plaintiff's First Amendment retaliation claim can proceed with respect to Abrams's actions related to obtaining the search warrant. Accordingly, this portion of the First Amendment retaliation claim must be dismissed. Because the Court has already determined that probable cause existed to support the search warrant, Plaintiff cannot state a claim that would show Abrams is in violation of clearly established law. Thus, the dismissal of this part of the retaliation claim is with prejudice.

14

Abrams does not appear to object to the R&R's recommendation that Plaintiff has stated a claim for First Amendment retaliation with respect to Abrams's instruction to DPHSS to withhold the CSR certificate. The Court agrees with the recommendation and this part of the claim survives the motion to dismiss.

### v.    Substantive Due Process Claim

Having reviewed the first amended complaint, Abrams's motion to dismiss the entire first amended complaint, and the R&R, the Court finds that Plaintiff's substantive due process claim has not been addressed. (*See* FAC ¶ 55(d).) To plead a substantive due process claim, a claimant must identify a fundamental right being violated, and that the government's actions are so arbitrary that they shock the conscience. *See Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994); *Leen v. Thomas*, --- F. App'x ---, 2017 WL 6507784, at *1 (Dec. 20, 2017).

Here, Joseph states that his substantive due process rights were violated "by the clearly arbitrary and unreasonable acts of Abrams" by using the wrongful refusal to renew the CSR as a pretext to raid the clinic. (FAC ¶ 55(d).) Joseph's claim with respect to the clinic raid fails because the conduct at issue is duplicative of the procedural due process claim and Fourth Amendment claim— using false information to obtain a search warrant and raid the clinic—and substantive due process claims are not available when there is an "explicit textual source of constitutional protection" from government action. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989) (holding that a 1983 claim must be judged against the "specific constitutional standard" rather than the "more generalized notion of substantive due process"); *Moreno v. City of Sacramento*, 101 F. App'x 656, 659 (9th Cir. 2004) (holding substantive due process claim could not go forward because conduct was covered by the

Takings Clause, Due Process Clause, and Fourth Amendment). Moreover, because probable cause existed to support the raid, he cannot demonstrate that a fundamental liberty interest was violated by the search. Accordingly, the substantive due process claim as to Abrams is dismissed with prejudice.

### vi. Conversion Claim

The R&R also does not address the conversion claim against Abrams, and Abrams has done no more than request that the Court decline to exercise supplemental jurisdiction over the claim if the federal claims are also dismissed. (Abrams Motion 15.) Plaintiff has not addressed the claim at all. Because the substance of the claim has not been argued and not all federal claims against Abrams have been dismissed, the Court will deny Abrams's motion to dismiss this claim.

### B. Gillan, Rabago, and Nadeau's Motion to Dismiss

Defendants Gillan, Rabado, and Nadeau submit that the first amended complaint must be dismissed because they are entitled to absolute or qualified immunity, and because Plaintiff has failed to state a claim. The Magistrate Judge recommended that Gillan and Nadeau's motion should be granted in part as to the due process violation and that the motion be granted as to the Fourth Amendment and equal protection claims subject to leave to amend. (R&R 36.) The R&R also recommended granting Rabago's motion to dismiss with prejudice. (*Id.*)

### i. Defendants Gillan and Nadeau's Objections

The R&R recommends denying Gillan and Nadeau absolute and qualified immunity, and recommends finding that Plaintiff stated a due process claim against them, but failed to state Fourth Amendment and equal protection claims. (R&R 25–30, 33–35.)

16

### a. Objection 1: Absolute Immunity

Gillan and Nadeau argue that they are entitled to absolute immunity because their acts "took place in the context of a quasi-judicial proceedings [*sic*]" of the Board of Allied Health Examiners, and they were only following instructions of the Office of the Attorney General. (DPHSS Defendants Objections 13, ECF No. 59.) In support of their argument, they rely on *Mishler v. Clift*, 191 F.3d 998 (9th Cir. 1999).

In *Mishler*, the Ninth Circuit addressed whether the Nevada Board of Medical Examiners was entitled to absolute immunity. *Id*. at 1007. The Ninth Circuit applied the functional test, which considers whether an entity acts similarly to judges or prosecutors, such as by "investigating charges, initiating charges, weighing evidence, making factual determinations, determining sanctions, and issuing written decisions." *Id*. at 1004.

Here, the DPHSS Defendants have failed to set forth why they satisfy any of the factors discussed in *Mishler* and therefore are not entitled to absolute immunity. (*See* DPHSS Defendants Motion to Dismiss 10–11, ECF No. 30-1.)

In the objections, Gillan and Nadeau argue instead that they are entitled to absolute immunity because of the Board's proceeding and because they were acting on instruction from the Attorney General's Office. Nothing in the authority provided demonstrates that a related Board proceeding would entitle anyone other than the Board members to absolute immunity. Furthermore, not even prosecutors are entitled to absolute immunity for legal advice given outside of adversarial proceedings, and therefore those that rely on the advice are, at most, entitled to qualified immunity. *See Ewing v. City of Stockton*, 588 F.3d 1218, 1233 (9th Cir. 2009) (prosecutors have qualified immunity for advice

to police, and police who rely on advice may be entitled to qualified immunity).  Accordingly, the DPHSS Defendants's objection is overruled.

**b.   Objections 2–4: Qualified Immunity**

Gillan and Nadeau next argue that they are entitled to qualified immunity because 9 G.C.A. § 67.303 permits a veterinarian to obtain a CSR only while also holding a license to practice veterinary medicine.  (DPHSS Defendants Objections 17.)  Further, they had been instructed by the Attorney General's Office not to release the CSR.  (*Id*. at 17–18.)

The objections fail to acknowledge two issues.  First, Joseph's CSR was renewed and allegedly available in June 2012, and the veterinary license did not expire until the end of 2012.[3]  Thus, Joseph's due process claim arose when the DPHSS Defendants refused to release it in June 2012 when it was requested.  Additionally, the statute relied on, 9 G.C.A. § 67.303 does not expressly state that a CSR certificate will not be issued to someone with an expired veterinary license.  In fact, nothing on the face of the statute addresses licenses to practice veterinary medicine.  Defendants appear to interpret "practitioner" under section (c) to refer to veterinarians.  While potentially a reasonable interpretation, they have failed to point to any authority, such as regulation or Department policy guidance document, that shows this is how the Department has decided to interpret and thereby enforce the statute.  Absent such authority, the Court will not defer to their unsupported argument that "practitioner" means Joseph must have a valid veterinary license.  Gillan and Nadeau have therefore failed to provide sufficient authority to demonstrate that it was lawful to withhold the CSR certificate after Joseph's veterinary

---

[3] The order to show cause from DPHSS indicates that Joseph's license to practice veterinary medicine was suspended, but the OSC was later rescinded.  No further evidence that his license was suspended has been provided to show that he was not entitled to the CSR in June 2012.

18

license expired at the end of 2012. Accordingly, they are not entitled to qualified immunity based on this authority.

Finally, with respect to the fourth objection and whether Gillan and Nadeau are entitled to qualified immunity because they relied on Abrams's instructions, a review of the first amended complaint demonstrates that they are not. Reliance on a lawyer's advice may be "evidence of good faith" but does not render the recipient's conduct "per se reasonable." *Friedman v. Boucher*, 580 F.3d 847, 859 (9th Cir. 2009) (citing *Stevens v. Rose*, 298 F.3d 880, 884 (9th Cir. 2002)). If a reasonable person would know he was acting in violation of clearly established law, then he is not entitled to immunity regardless of the attorney's advice. *Id.*

Here, Plaintiff has alleged that when Rabago contacted Abrams in June 2012, "Rabago and Abrams knew that there was no valid lawful basis not to release the CSR." (FAC ¶ 19.) Further, when Joseph's staff attempted to pick up the CSR and were stopped, "Gillan, Nadeau, and Abrams knew that there was no valid lawful basis not to release the CSR." (*Id.* ¶ 20.) The R&R concludes that reading the allegations in the light most favorable to Plaintiff, the DPHSS Defendants "knew or should have known" that they were violating clearly established law and are therefore not entitled to qualified immunity. (R&R 27.) The Court agrees and the DPHSS Defendants's objections are overruled.

### c. Objection 5: Failure to State a Claim as to Gillan

Gillan objects to the recommended finding that Plaintiff has stated a procedural due process claim against him because he was not responsible for releasing the CSR, did not instruct anyone not to release the CSR, it was unclear if Joseph could have a CSR while his license was suspended, and *respondeat superior* is inapplicable, and so he cannot be held liable for Nadeau's failure to release the

19

CSR. (DPHSS Defendants Objections 22.)

The first amended complaint states that Gillan issued the order to show cause that was later rescinded. (FAC ¶¶ 15, 17.) It also alleges that he was instructed by Abrams not to release the CSR and knew there was no valid reason for withholding it. (*Id.* ¶ 20.)[4] No other allegations as to Gillan's responsibility to release it or that he should have told Nadeau to release it exist. Although the R&R's conclusion that Gillan could have instructed Nadeau to release the CSR may be plausible, without more allegations from Plaintiff, the Court will not infer this given the minimal allegations against Gillan and no details as to his duties at DPHSS. Accordingly, Plaintiff has failed to state a claim against Gillan. Gillan's objection is sustained, and the procedural due process claim is dismissed without prejudice to amend the complaint.

### d. Objections 6–8: Failure to State a Claim as to Nadeau

Nadeau's objections largely rehash objections 2–5, arguing that at most, he was acting on instructions from Abrams, and Joseph was not entitled to a CSR because his license to practice veterinary medicine had expired. (DPHSS Defendants Objections 24–26.)

Again, Nadeau overlooks the fact that Joseph's veterinary license did not expire until the end of 2012, and therefore the revocation and refusal to release the CSR in June 2012 could not be based on the expiration of Joseph's veterinary license. Moreover, as set forth above, an employee is not

---

[4] The Court is aware that Plaintiff also complains that Gillan and the other Defendants never issued another order to show cause. (FAC ¶ 24.) However, Plaintiff is aware, as shown by his informing DPHSS that the order to show cause was untimely because it was filed less than 30 days before his CSR certificate expired (*id.* ¶ 16), that Defendants lacked statutory authority to issue another OSC under Guam law after his CSR expired. Plaintiff cannot use the same statutory provision as a shield and sword to avoid and then later demand an order to show cause. The Court understands that procedural due process is owed to Plaintiff with regard to revocation or refusal to release the CSR certificate, but does not credit Plaintiff's complaint that he never received a second OSC.

20

entitled to rely on information from an attorney when he knows the information to be false.  Taking Joseph's allegations as true—that Nadeau knew there was no valid basis for withholding the CSR—Joseph has stated a claim for a due process violation against him.  Moreover, although Nadeau argues that there are no allegations that he had any duties with respect to the release of the CSR, the allegations do indicate that he was involved with the decision to withhold it.  For example, the complaint states that "the CSR certificate for Dr. Joseph was reviewed and approved by Nadeau" (FAC ¶ 18), and that "Nadeau e-mailed Gillan as to the refusal to release the CSR," but at the time "knew that there was no valid lawful basis not to release the CSR."  (*Id*. ¶ 20.)  Even if these allegations are proved untrue at a later stage of this case, on a motion to dismiss, it is insufficient for Nadeau to simply state that they are untrue and therefore Plaintiff has failed to state a claim.  Accordingly, Nadeau's objections are overruled.

### ii.    Plaintiff's Objections

Joseph objects to the R&R with respect to the recommended findings that the due process and Fourth Amendment claims against Rabago be dismissed, and that the Fourth Amendment and equal protection claims against Gillan and Nadeau be dismissed.

### a.  Due Process Claim against Rabago

The R&R recommends dismissing the procedural due process claim against Rabago because there is "no allegation that Rabago participated" in refusing to release the CSR certificate.  (R&R 33.) Plaintiff objects on the ground that it was sufficient to allege that she knew it was wrongful to refuse to release it.  (Pl.'s Objections 9.)

The Court agrees that Plaintiff has failed to state a claim.  To plead a due process claim, a

plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000). With Rabago, Plaintiff has not articulated any acts taken by her to deprive him of the CSR. Rabago may have known that he was entitled to it, but absent any other allegations about Rabago's duties and involvement, it is not reasonable to infer that she could have released it to Joseph and therefore violated his due process rights. Accordingly, Plaintiff's objection is overruled, and the claim is dismissed without prejudice to amend the complaint.

### b. Fourth Amendment Claim against Rabago, Gillan, and Nadeau

As set forth above with respect to Abrams, the administrative warrant is based on probable cause even absent the allegations regarding Joseph's CSR certificate. Accordingly, Joseph cannot maintain a Fourth Amendment claim against the DPHSS Defendants for allegedly violating his constitutional right to be free from unreasonable search and seizure. Accordingly, Plaintiff's objections related to the Fourth Amendment claim are overruled and the claim is dismissed as to all DPHSS Defendants with prejudice.

### c. Equal Protection Claim against Gillan and Nadeau

The R&R recommends dismissing the equal protection claim because there are no allegations in the complaint to support the legal claim that "Defendants had never previously sought and obtained a warrant against any other holder of a CSR on similar grounds." (R&R 35.) Plaintiff objects on the grounds that Duenas's deposition provides sufficient facts to support the claim. (Pl's. Objections 12–13.)

First, Duenas's deposition is not referenced in the first amended complaint and it is therefore

inappropriate to consider the contents of it on a motion to dismiss.  *See United States v. Corinthian Colleges*, 655 F.3d at 999 (complaint must refer to document for court to consider on motion to dismiss).  The Court will consider only those allegations in the first amended complaint to decide whether Plaintiff has stated a claim.

To succeed on a "class of one" equal protection claim, a plaintiff must demonstrate that the state actors intentionally treated him differently than those similarly situated without a rational basis. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).  Here, Plaintiff has alleged only that DPHSS had never obtained a search warrant against any other holder of a CSR "on similar grounds," and that there was no rational reason to treat Joseph differently from other CSR holders. (FAC ¶ 55(c).)

The Court agrees with the R&R that these minimal, conclusory allegations are insufficient to plead an equal protection claim.  Nothing suggests that all CSR holders are similarly situated or that a particular CSR holder, who is also a vet or medical practitioner, for example, was treated differently. Moreover, it is not enough to indicate that warrants were not issued "on similar grounds" because the alleged violations at issue for other CSR holders may have reasonably been different.  *See Konarski v. Rankin*, 603 F. App'x 544, 546–47 (9th Cir. 2015) (plaintiffs failed to plead equal protection claim because they provided no facts to show "similarly situated individuals were treated differently or otherwise implying that there was no rational basis for the difference in treatment").  Accordingly, the equal protection claim is dismissed without prejudice.

### iii. Substantive Due Process Claim

Plaintiff's substantive due process claim against the DPHSS Defendants has not been

addressed.  (*See* FAC ¶ 55(d).)  To plead a substantive due process claim, a claimant must identify a fundamental right being violated, and that the government's actions are so arbitrary that they shock the conscience.  *See Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994); *Leen v. Thomas*, 708 F. App'x 331, 332 (Dec. 20, 2017).

Here, Joseph states that his substantive due process rights were violated "by the clearly arbitrary and unreasonable acts" of the DPHSS Defendants by (1) refusing to release the CSR, and (2) using the wrongful refusal to renew the CSR as a pretext to raid the clinic.  (FAC ¶¶ 53(b), 55(d).) Joseph's claim fails for the same reasons as those against Abrams.  (*See* Part A(v) *supra*.) Accordingly, the substantive due process claim as to the DPHSS Defendants is dismissed with prejudice.

### iv.    Conversion Claim

As with Abrams, the DPHSS Defendants fail to address why the conversion claim against them should be dismissed.  Accordingly, the Court will not dismiss the claim against any of the DPHSS Defendants at this time.

### V.    CONCLUSION

For the reasons set forth above, Defendant Abrams' objections to the Report and Recommendation (ECF No. 55) are SUSTAINED IN PART and OVERRULED IN PART. Defendants Gillan and Rabago's objections to the Report and Recommendation (ECF No. 59) are SUSTAINED IN PART and OVERRULED IN PART.  Plaintiff's objections to the Report and Recommendation (ECF No. 56) are OVERRULED.

The Report and Recommendation (ECF No. 52) is ADOPTED IN PART.

24

Defendant Abrams' motion to dismiss (ECF No. 29) is GRANTED IN PART and DENIED IN PART. Plaintiff's procedural due process, First Amendment retaliation by withholding the CSR, and conversion claims may proceed, but the remaining claims are dismissed with prejudice.

Defendants Gillan and Nadeau's motion to dismiss (ECF No. 30) is GRANTED IN PART and DENIED IN PART. Plaintiff's procedural due process and conversion claims against Nadeau may proceed. The procedural due process claim against Gillan and equal protection claim against Gillan and Nadeau are dismissed without prejudice. The remaining claims are dismissed with prejudice.

Defendant Rabago's motion to dismiss (ECF No. 30) is GRANTED IN PART and DENIED IN PART. The conversion claim may proceed and the procedural due process claim is dismissed without prejudice. All remaining claims are dismissed with prejudice.

Defendant Highsmith's motion to dismiss (ECF No. 28) is DENIED AS MOOT.

**SO ORDERED** on July 24, 2018.

_____
RAMONA V. MANGLONA, Designated Judge

25