# IN THE DISTRICT COURT
# FOR THE TERRITORY OF GUAM

| | |
|---|---|
| JOEL JOSEPH,<br><br>    Plaintiff,<br><br>vs.<br><br>BENJAMIN ABRAMS, JAMES GILLAN, ROSANNA RABAGO, M. THOMAS NADEAU, and DOES I through L,<br><br>    Defendants. | Case No.: 14-cv-00005<br><br>**ORDER DENYING DPHSS DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

## I.    INTRODUCTION

Before the Court is Defendants Gillan, Rabago and Nadeau's ("DPHSS Defendants") Motion to Dismiss Second Amended Complaint (ECF No. 118). Plaintiff Joseph filed his Opposition (ECF No. 120), to which DPHSS Defendants filed a Reply (ECF No. 130). On February 8, 2019, the parties stipulated to the dismissal of the third and fourth causes of action (equal protection and conversion claims), which the Court granted. (Stipulated Motion, ECF No. 126; Order, ECF No. 129.) Therefore, the only remaining claim addressed in the motion to dismiss is the first cause of action (due process claim). The matter came on for hearing on March 6, 2019. Having reviewed the briefs and considered the arguments of counsel, the Court now DENIES the Motion to Dismiss for the reasons set forth below.

1

## II. BACKGROUND

The Court provides a brief review of the allegations relevant to the due process claim only. Plaintiff Joel Joseph was a licensed veterinarian in Guam. Defendants are James Gillan, Director of the Department of Public Health and Social Services ("DPHSS"); M. Thomas Nadeau, head of Environmental Health Division of DPHSS; Rosanna Rabago, Environmental Health Officer, DPHSS; and Benjamin Abrams, Assistant Attorney General of Guam. (Second Amended Complaint ("SAC") ¶ 6–10, ECF No. 115.) All defendants are sued in their individual capacity. *Id*. Joseph sought to renew his controlled substances registration certificate ("CSR") that expired on April 30, 2012. (SAC ¶ 17–18; CSR Certificate, Ex. 1, ECF No. 115-1 at 1.) He submitted a renewal application to DPHSS five days prior to the expiration date. (Ex. 2, ECF No. 115-1 at 2.) In response, DPHSS issued an order to show cause, signed by Defendants Gillan and Nadeau, because Joseph's license to practice veterinary medicine had been suspended on April 27, 2012 by the Guam Board of Allied Health Examiners, and the Guam Uniform Controlled Substances Act only permits practitioners to hold CSRs. (SAC ¶ 20; Ex. 3, ECF No. 115-1 at 3–4.) Joseph responded in writing that the order to show cause was untimely under 9 G.C.A. § 67.305(a)[1] (SAC ¶ 21), and DPHSS rescinded the order to show cause in a letter signed by Gillan. (Ex. 4, ECF No. 115-1 at 5.) The letter stated that Joseph's "renewal application for CSR will be processed accordingly," and that he would be "contacted once it is finalized." (*Id*.)

On or about May 31, 2012, Joseph's CSR application was reviewed and approved by

---

[1] Section 67.305(a) provides that "[i]n case of a refusal to renew a registration, the order must [be] served not later than thirty (30) days before expiration of the registration." Joseph submitted his renewal application on April 25, 2012, five days before it expired, and the order to show cause issued on May 4, 2012, four days after the certificate expired.

2

Defendant Nadeau. (SAC ¶ 23.) Approximately five days later, Leo Casil, the acting DPHSS Director, signed Joseph's CSR. (*Id.*) That same day, a DPHSS employee contacted Joseph's clinic to inform him that the renewed CSR was ready to be picked up. (*Id.* ¶ 24.) The manager of the clinic, Kenneth Massey, requested that the CSR be mailed. (*Id.*) Defendant Rabago contacted DPHSS's legal counsel, Defendant Abrams, who instructed Rabago not to release the CSR despite knowing there was no lawful basis to do so. (*Id.*) On or about June 25, 2012, Massey went to DPHSS to retrieve the CSR and the DPHSS staff refused to release it. (*Id.* ¶ 25.)

Around the time that DPHSS refused to release the CSR certificate to Massey, Defendant Nadeau emailed Defendants Gillan and Abrams, and they collectively decided not to release the certificate. (*Id.*) Joseph requested documentation from the DPHSS Defendants regarding the refusal to release his CSR certificate pursuant to Guam's Sunshine Act. (*Id.* ¶ 26.) In reply, Assistant Attorney General David Highsmith confirmed that the DPHSS Defendants refused to release the certificate on the advice of Defendant Abrams in a letter to Joseph dated July 24, 2012. (*Id.*) On July 26, 2012, Massey emailed to Defendant Nadeau regarding the refusal and Nadeau responded by referring all further inquiries to the Office of the Attorney General. (*Id.* ¶ 27.)

Joseph filed the complaint (ECF No. 1) in this case on April 18, 2014. He filed a first amended complaint (ECF No. 26) on July 11, 2014, and a second amended complaint on December 20, 2018. In the SAC, Joseph brought four causes of action: (1) Section 1983 claim for a due process violation against all four Defendants; (2) First Amendment claim against Defendant Abrams; (3) equal protection claim against Defendants Gillan and Nadeau, and (4) conversion claim against Defendants Gillan, Nadeau, and Rabago. (SAC at 16–22.) DPHSS Defendants moved to dismiss the first, third,

3

and fourth causes of action on January 10, 2019. (ECF No. 118.) On February 8, 2019, Joseph and DPHSS Defendants filed a stipulated motion to dismiss the third and fourth causes of action, along with DPHSS's Anti-Slapp motion for costs and attorneys' fees under Guam's Citizen Participation in Government Act, 7 GCA § 17101 *et seq*. (ECF No. 126.) The Court granted the stipulated motion on February 13, 2019 (ECF No, 129), leaving the first cause of action as the only remaining issue in the motion to dismiss. Defendant Abrams is not a party to this motion; he filed his answer (ECF No. 117) on January 10, 2019.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the pleading must contain "more than labels and conclusions"; the "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A Rule 12(b)(6) "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

//

## IV. DISCUSSION

DPHSS Defendants put forth two arguments why Joseph's due process claim should be dismissed. First, they argue that Joseph has failed to state a claim against them for procedural due process violations because he has alternative state remedies. (Memo at 7, ECF No. 118-1.) Second, they assert that he has failed to state a due process claim specifically against Defendants Rabago and Nadeau because he has not alleged that they were responsible for issuing the CSR renewal. (*Id.*)

### a. Available Postdeprivation Remedies

DPHSS Defendants' first argument is that there is no cognizable due process claim because Joseph has available postdeprivation state remedies. (Motion at 9.) This argument is grounded in the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)) and *Hudson v. Palmer*, 468 U.S. 517 (1984), as applied by the Ninth Circuit in *Raditch v. United States*, 929 F.2d 478 (9th Cir. 1991). (Motion at 9-10, ECF No. 118-1; Reply at 6, ECF No. 130.) Joseph counters that the availability of adequate postdeprivation remedies does not bar his due process claim because the *Parratt/Hudson* rule is not the correct standard; instead, the Court should apply the test announced by the Supreme Court in *Zinermon v. Burch*, 494 U.S. 113 (1990) and applied by the Ninth Circuit in *Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001). (Opp'n at 5–6, ECF No. 120.)

In *Parratt* and *Hudson*, the Supreme Court held that, under certain circumstances, a meaningful postdeprivation remedy is sufficient due process. Both cases involved the deprivation of property by prison guards. In *Parratt*, a prisoner claimed that prison officials violated due process by negligently losing a package mailed to him. 451 U.S. at 529. The Court found a deprivation of property but held

that existing state tort remedies that the prisoner could have used provided a means for redress of the deprivation and were sufficient to satisfy the requirement of due process. *Id.* at 543–44. Postdeprivation remedies provide due process when it is "not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.* at 541. Prison officials cannot predict when they are going to lose a package in the mailroom and therefore cannot provide a meaningful hearing before the loss occurs. *Id.* Subsequently, in *Hudson*, the Court extended this rule to the intentional deprivation of property by a prison guard, because the "state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." 468 U.S. at 533.

Joseph argues that postdeprivation process is sufficient only in limited circumstances – such as when the conduct is random, unpredictable and unauthorized – and that in those situations where the state can feasibly provide predeprivation process, it must do so. (Opp'n at 6, 7) (citing *Shingault v. Hawks*, 782 F.3d 1053, 1058, (9th Cir. 2015)). Instead of applying the *Parratt*/*Hudson* doctrine, Joseph urges the Court to use the standard established in *Zinermon v. Burch*. In *Zinermon*, the plaintiff sued officials at a state mental health treatment center for depriving him of liberty without due process by admitting him as a voluntary patient when he lacked the capacity to consent to his admission and the officials knew or should have known he was incompetent. 494 U.S. at 114–15. The officials argued that, under *Parratt* and *Hudson*, the plaintiff had failed to state a claim because he only alleged a random, unauthorized violation of the law and he had an adequate postdeprivation tort remedy. *Id.* at 115. The Court rejected this argument, finding that postdeprivation remedies were not sufficient due process because (1) the deprivation was not unpredictable, (2) predeprivation process was not

6

impossible, and (3) the officials' conduct was not unauthorized. *Id.* at 136–38. First, it is foreseeable that a person requesting mental health treatment might not be competent to give informed consent, and any erroneous deprivation would occur at a specific and predictable point in the admission process. *Id.* at 136. Second, unlike in *Parratt* or *Hudson*, where it would have been absurd to suggest a predeprivation hearing before an officer mistakenly loses a package or maliciously destroys property, this deprivation could have been avoided if the state had provided for additional procedures at the time of admission. *Id.* at 137. Finally, the officials in *Zinermon* were authorized to admit mental patients and had a duty to set up procedural safeguards against unlawful confinements. *Id.* at 138. Their conduct was unauthorized only in that it was an abuse of position. *Id.* For these reasons, the Court held that the officials "cannot escape § 1983 liability by characterizing their conduct as a 'random, unauthorized' violation . . . which the State was not in a position to predict or avert, so that all the process [plaintiff] could possibly be due is a postdeprivation damages remedy." *Id.*

Guam law provides for procedures governing the processing of CSRs. Pursuant to 9 GCA § 67.305(a), "[b]efore denying, suspending, revoking or refusing to renew a registration, DPHSS shall serve upon the applicant or registrant an order to show cause why registration should not be denied, suspended or revoked, or the renewal refused." However, "[i]n case of a refusal to renew a registration, the order must [be] served not later than thirty (30) days before expiration of the registration." *Id.* This second requirement has the unfortunate consequence of allowing a registrant to render it impossible for DPHSS to timely serve the order to show cause required to refuse a renewal by filing that application less than 30 days prior to the expiration of his current CSR certification. This is exactly what happened here – Joseph filed his renewal five days before the expiration date and then asserted

7

untimeliness when DPHSS Defendants attempted to provide predeprivation process in the form of an order to show cause hearing. It is not lost on Defendants or the Court that Joseph thwarted the very process he now argues he was owed. However, Defendants could have issued an order to show cause to suspend or revoke Joseph's newly renewed CSR instead of simply refusing to release it.

DPHSS Defendants argue that *Parratt*/*Hudson* applies here because either (1) DPHSS Defendants failed to follow the procedures or (2) there was no procedure and DPHSS Defendants lacked the authority and discretion to issue the renewal. (Reply at 10.) If they violated existing procedures, they argue this case "falls squarely in the rule pronounced by *Parratt* and *Hudson*." (*Id.*) Alternatively, if there is no procedure and they have not been granted the legal authority and discretion to effect the deprivation, then they claim they were in no position to provide any predeprivation process and the third factor in *Zinermon* is not met. (*Id.*) Joseph counters that, as in *Zinermon*, the deprivation here was not random, unpredictable or unauthorized. (Opp'n at 7–8.)

The Court agrees that the *Zinermon* standard is applicable here. First, this type of deprivation would predictably take place at a specific point in the process – after an application is made for a CSR. Second, it would not be impossible to provide predeprivation process here. *Parratt*/*Hudson* dealt with the absurdity of asking the State to provide a hearing before an event that it would be impossible to predict. As in *Zinermon*, here "there is nothing absurd in suggesting that, had the State limited and guided [Defendants'] power . . . the deprivation might have been averted." *Zinermon*, 494 U.S. at 137. Finally, DPHSS Defendants had the authority to issue, suspend, revoke or refuse to renew CSRs, as well as the authority to adopt rules governing registration process. *See* 9 GCA § 67.305(a); 9 GCA § 67.302(a) ("A person who manufactures, distributes or dispenses a controlled substance within Guam

8

. . . shall obtain annually a *registration issued by DPHSS in accordance with rules adopted by DPHSS*.") (emphasis added). While the Defendants were not authorized to refuse to release an approved CSR, it does not follow that their conduct was "unauthorized" in the sense that the term is used in *Parratt*, *Hudson*, and *Zinermon*. The "deprivation here is 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights … by an official's abuse of his position." *Zinermon*, 494 U.S. at 138.

Applying *Zinermon*, the Court finds that Joseph has alleged sufficient facts to state a plausible procedural due process claim under a cognizable legal theory. Therefore, the Court does not need to reach the question of the adequacy of the available postdeprivation remedies.

### b. Integral Participants

DPHSS Defendants assert that Joseph has not stated a claim against Defendants Rabago and Nadeau because he does not allege that they were responsible for issuing the CSR. (Memo. at 11.) Defendants argue that, because a due process claim against Rabago and Nadeau requires that they had decision-making authority, the complaint does not state a plausible claim against those two Defendants. (*Id.* at 15.) Joseph counters that all DPHSS Defendants were integral participants in the deprivation of his right to due process and therefore can be held liable under Section 1983. (Opp'n at 8.)

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting

9

*Johnson v. Duffy*, 588 F.3d 740, 743–44 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* The "integral participant" rule "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). On a motion to dismiss, the court must determine if the complaint plausibly alleges that each defendant was an integral participant to the constitutional violation. *Keates v. Koile*, 883 F.3d 1228, 1242 (9th Cir. 2018).

Here, it is quite plausible that Nadeau was an integral participant in the issuance of a CSR – as the DEH Administrator, his signature is on both the certificate and the Order to Show Cause. (SAC Exs. 1 and 3, ECF No. 115-1 at 1, 3–4.) As to Rabago, Joseph alleges that she participated in the collective decisionmaking to refuse to release his CSR. (SAC ¶¶ 19, 28.) He also alleges that, instead of releasing the CSR, Rabago contacted Abrams, who instructed her not to release it. (*Id.* ¶ 24.) Rabago argues these allegations are insufficient and too speculative to show that she was an integral participant. (Reply at 17.)

To determine if a complaint plausibly alleges integral participation, the timing and degree of involvement are important factors. *See Keates*, 883 F.3d at 1242 (finding that plausible claim of integral participation against officials who collaborated in the issuance of a temporary custody notice, but not against a supervisor who was merely alleged to be involved in the investigation or a social worker who sent a letter after the state took custody of the child). "Because vicarious liability is inapplicable to §1983 suits, 'a plaintiff must plead that each Government-official defendant, through

10

the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676). There is also support for allowing allegations against officials who actively participate in the enforcement of a decision they know or have reason to know deprives the plaintiff of his or her constitutional rights. *See Macias v. Filippini*, 2018 WL 2264243 at *9–10 (E.D. Cal. May 17, 2018) (plaintiff sufficiently alleged a due process violation against a deputy who enforced an indefinite ban of a parent from a school campus because the deputy's extensive training was enough to infer that he was aware of a 14-day cap on bans; it was immaterial that the deputy was not the official responsible for providing a hearing to the parent). Here, Joseph alleges that Rabago was involved in the deprivation starting from the processing of the renewal application, that she was the person who initially contacted Defendant Abrams after the CSR was renewed and ready for pickup, and that she took part in the continuing decision to refuse to release the CSR even after the Board's ruling was stayed by the Superior Court of Guam. (SAC ¶¶ 19, 24, 28.)

Defendants argue that this case is analogous to *Sjurset v. Button*, 810 F.3d 609 (9th Cir. 2015). There, the court found that police officers who assisted in removing two children from their home without a warrant pursuant to a protective-custody determination made by Department of Human Services caseworkers were not integral participants because they did not participate in the underlying determination. 810 F.3d at 618–19. They had no input in the decision and were not expected to verify the legality of the decision made by an entirely separate agency before carrying it out. *Id.* at 619–20. DPHSS Defendants assert that similarly here the decision not to release the CSR was made by the Office of the Attorney General, not DPHSS. (Reply at 18–19.) Therefore, the DPHSS Defendants could not be integral participants in the decision, which was made by Defendant Abrams, but were

11

simply following his instructions. This argument is unpersuasive. First, unlike the police officers in *Sjurset*, the DPHSS Defendants had the legal authority to make the decision regarding the CSR. *See* 9 GCA § 67.302 (DPHSS shall issue annual registrations in accordance with rules it adopts). The fact that they turned to the Attorney General's Office for advice (or even instructions), regardless of the level of deference such advice might typically receive, does not strip them of their responsibilities under the law. Second, Joseph alleges collaboration and discussions between the DPHSS Defendants and the Attorney General's Office regarding the refusal to release the CSR, a factor that was missing in *Sjurset*. (SAC ¶ 24–26.)

Taking all well-pleaded factual allegations as true and construing them in the light most favorable to Joseph, it is plausible that Rabago and Nadeau were integral participants in the making of the decision not to release his CSR, as well the enforcement of that decision despite the fact that they knew that there was no valid basis for the refusal. The complaint here contains "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Joseph makes factual allegations about the Defendants' conduct that give rise to a plausible inference all three DPHSS Defendants deprived Joseph of his CSR without due process. Therefore, Joseph's procedural due process claim is sufficiently plead against all DPHSS Defendants to survive a 12(b)(6) motion to dismiss.

## V.     CONCLUSION

For the reasons set forth above, the Court DENIES DPHSS Defendants' Motion to Dismiss Joseph's procedural due process claim because (1) the availability of postdeprivation remedies does not bar a Section 1983 claim for a due process violation that is not random, unpredictable, and

12

unauthorized, and (2) Joseph has alleged sufficient plausible facts to support his claim that Nadeau and Rabago were integral participants in the deprivation of his CSR.

To the degree that Joseph appears to bring a substantive due process claim, DPHSS Defendants are correct that this Court dismissed that claim with prejudice. (Memo. at 16) (citing Amended Decision and Order at 24, ECF No. 114). Therefore, Joseph's claim may proceed as a procedural due process claim only.

IT IS SO ORDERED this 2nd day of April, 2019.

RAMONA V. MANGLONA
Designated Judge